DOROTHY NUSBAUM, Appellant, v. JOSEPH H. NUSBAUM, Respondent.

First Department, June 17, 1952.

*Ralph Montgomery Arkush* of counsel (*Sidney Usoskin* with him on the brief; *Ralph Montgomery Arkush,* attorney), for appellant.

*Jules H. Enrich* of counsel (*Hays Wolf Schwabacher Sklar & Epstein,* attorneys), for respondent.

VAN VOORHIS, J. The second amended complaint was properly dismissed by the order appealed from, upon the ground that the cause of action is barred by the Statute of Limitations. The action has been brought by a wife to set aside as improvident

a separation agreement entered into on June 21, 1939. The parties were married in 1926. The wife alleges that defendant husband earned from $20,000 to $25,000 when the agreement was signed. It provided $80 per week for her support and for the maintenance and education of two children, eleven and eight years old, and that these weekly payments would be reduced by $20 when each child separately became twenty-one years of age, or died or married.

There is no contention that defendant husband has failed to make the payments agreed upon.

It is undisputed that more than ten years elapsed after the making of the separation agreement before the commencement of this action. Plaintiff wife contends that the separation agreement was void *ab initio,* and not merely from the time when its nullity should be declared by a court of competent jurisdiction, and that therefore it can be vacated at any time, like a cloud upon the title to real property (cf. *Ford* v. *Clendenin,* 215 N. Y. 10, 16). In order to sustain plaintiff's theory that there is no applicable Statute of Limitations, it would be necessary to hold that this separation agreement never had force or effect, so that it would not bar a larger award of alimony in an action for separation or divorce, even if it were not previously vacated. The outcome depends upon whether this contract was void or voidable in the exact sense of those terms. If it were void in the beginning, an action to declare the jural relation between the parties could be maintained at any time. A judgment would ascertain but not create the contract's nullity; it would merely declare what had been the actual legal relationship between the parties all along. The order appealed from, directing dismissal of the complaint, would have to be reversed, and the motion to dismiss the complaint denied, if the separation agreement was, in a literal sense, void *ab initio.* Upon the other hand, if the agreement had some vitality from the outset, and became enforcible between the parties until its nullity should be declared by a court of competent jurisdiction, the ten-year Statute of Limitations commenced to run and bars the action. Upon that theory, the separation agreement is not really void, but voidable, which means capable of ratification (cf. contracts made under duress, *Taylor* v. *Russell,* 258 App. Div. 305, 308, per SEARS, P. J.).

It has not been alleged that plaintiff was ever unaware of the provisions of this separation agreement, under which she has received nearly $50,000 in installments during eleven years, but rather that " Due to her sick and nervous condition she

was incapable of forming a judgment as to the course of action which was in her best interest'' when she signed it. It is assumed, for the purposes of the appeal, that the complaint states a cause of action under the ruling of the Court of Appeals in *Pomerance* v. *Pomerance* (301 N. Y. 254), but we do not read that decision as determining the question here at issue. The present case is unaffected by the comment at pages 256–257, that '' the statements in various opinions of this court that a separation agreement valid on its face stands so long as ' unrevoked ' or ' unimpeached ' (See *Galusha* v. *Galusha,* 138 N. Y. 272, 283; *Goldman* v. *Goldman,* 282 N. Y. 296, 300, 301, 302; *Jackson* v. *Jackson,* 290 N. Y. 512, 516) do not help us to the decision of cases (such as this) where validity is challenged.'' The Statute of Limitations was not involved in *Pomerance* v. *Pomerance* (*supra*). There was no occasion to decide, nor does the question appear to have been considered, when the cause of action therein accrued, nor whether the contract was void as distinguished from voidable.

Appellant herein points to other decisions wherein contracts made in violation of section 51 of the Domestic Relations Law have been characterized as void, such as *Haas* v. *Haas* (298 N. Y. 69) and *Jackson* v. *Jackson* (290 N. Y. 512). Where not determinative of the point now at issue, the word '' void '' has often been used in judicial opinions in the sense of voidable. Thus in *Matter of Silkman* (121 App. Div. 202, 204, affd. 190 N. Y. 560) the Appellate Division stated: '' Of course there is distinction between void and voidable, which, though nice, may often be important. But void is used in the sense of voidable '', and the following statement is quoted from *Somes* v. *Brewer* (2 Pick. [Mass.] 183, 191): '' Whatever *may be avoided* may, in good sense, to this purpose, be called void, and this use of the term *void* is not uncommon in the language of statutes and of courts '' (italics from original).

The *Haas* case (*supra*) presented a clause in a separation agreement suspending all payments of alimony while the wife was engaged in retail business in competition with her husband. That clause was held to be void, without passing upon any other provision of the contract. The *Haas* opinion distinguishes, in this particular, agreements '' ' for regular, substantial, periodic payments ' to the wife as a measure of the husband's continuing obligation to support her '' (298 N. Y. 69, 72), which, presumably, were not considered void, but voidable if evidence were to establish *aliunde* that the amount agreed upon for support was so disproportionate as to have been grossly unfair or

oppressive. The same distinction is made in *Jackson* v. *Jackson* (*supra*), where, after citing *Galusha* v. *Galusha* (138 N. Y. 272, 283) and *Goldman* v. *Goldman* (282 N. Y. 296, 300), the opinion adds (pp. 516–517): "This court did say and hold in those cases that so long as a separation agreement 'remains unimpeached, it must be the measure of the allowance for the support of the plaintiff, which the defendant shall pay.' But the *Galusha* and *Goldman* cases had to do with agreements for regular, substantial, periodic payments to the wives, representing admeasurements and determinations, in dollars, of the husbands' continuing obligations to support their wives. Where the parties have by an agreement 'lawful in form and apparently valid' (*Galusha* case, *supra,* p. 283) fixed an amount for support, the courts will treat their agreement, so long as it remains unrevoked, as the proper measure of compensation. But an agreement to pay, and a payment of, a lump sum to a wife in return for a release of the husband from all future liability for the wife's support, is something quite different." The question in the *Jackson* case was whether a separation agreement which entirely released the husband from support of the wife on payment of a small lump sum, and which had not been set aside in court, barred the maintenance in this State of an action for separation by the wife. The holding was that it did not, for the reason that the agreement in that suit was wholly void. What is material to the instant case, is the distinction that was drawn between agreements like the present, which are regular on their face and provide for substantial, periodic payments of alimony. It is clearly inferred, as in *Goldman* v. *Goldman* (*supra*) and in *Kyff* v. *Kyff* (286 N. Y. 71), that an agreement of the present type is enforcible, and would bar increased support unless and until set aside, as in *Schmelzel* v. *Schmelzel* (287 N. Y. 21).

An improvident separation agreement can, of course, be vacated even though money for support be payable in periodic installments. As stated in the *Pomerance* case (*supra*), it is not the law that only lump-sum settlement agreements are subject to later attack by action. But a difference may exist, which is present in this suit, determining whether the agreement be void or voidable. The theory on which agreements of the type here presented are set aside, stems from language in *Galusha* v. *Galusha* (116 N. Y. 635, 646), quoted in the *Goldman* case (282 N. Y. 296, 300): "If * * * the contract [regular on its face] *without fraud or duress* is properly and voluntarily executed, the court will not interfere" (italics supplied). Con-

tracts which are the product of fraud or duress are capable of ratification and are voidable, not void (*Taylor* v. *Russell,* 258 App. Div. 305, *supra,* and authorities cited at p. 308). Therefore the Statute of Limitations runs against actions to set them aside.

Taking advantage of a wife's improvidence under such circumstances is regarded as a species of fraud or duress, upon the assumption that she is at the mercy of her husband.

Although evidence may be received of an increase in the husband's income or property after making a separation agreement, the Court of Appeals in the *Pomerance* case (301 N. Y. 254, 256, *supra*) did not pass upon its " ultimate impact on the decision of the case ". Such evidence could hardly create a new and independent cause of action, subsequently accruing, without relation to the circumstances of the parties when the separation agreement was signed.

Special Term correctly held that plaintiff's cause of action to set aside this agreement accrued when the agreement was made, and that the complaint should be dismissed under rule 107 upon the ground that it is barred by the ten-year Statute of Limitations.

The order granting defendant's motion to dismiss the complaint should be affirmed.

PECK, P. J., COHN and BERGAN, JJ., concur.

Order unanimously affirmed.