■ MONTE KROMBERG, Respondent, v BERNICE KROMBERG, Appellant.— In an action, *inter alia,* to compel the defendant wife to convey title to certain real property in accordance with a provision of a separation agreement, defendant appeals from so much of an order of the Supreme Court, Nassau County, dated February 25, 1976, as (1) granted plaintiff's motion for summary judgment and (2) denied her cross motion for summary judgment. Order modified by adding thereto a provision that the grant of summary judgment to plaintiff shall be without prejudice to further proceedings by defendant to modify the alimony provisions of the judgment of divorce which may be necessitated by a change in circumstances resulting from plaintiff's successful pursuit of remedies available to a tenant in common. As so modified, order affirmed insofar as appealed from, without costs or disbursements. On February 12, 1971 the parties entered into a separation agreement whereby the husband, plaintiff herein, agreed to make support payments to his wife based upon a sliding scale geared to his net taxable income. In addition, the agreement contained a recitation in paragraph EIGHTH that "The Husband has conveyed to the Wife, by deed executed and delivered simultaneously herewith, the property which was the former home of the parties and in which the wife now resides". Paragraph EIGHTH also provides: "This conveyance is made in consideration of the Wife's acceptance of the other provisions herein for her support. If, at any future time, the Wife brings action to cancel this agreement or applies to any court for increase in her support payments, she hereby agrees to reconvey the said premises to herself and the Husband as tenants in common." On or about August 18, 1972 the wife, defendant herein, commenced an action contain-

ing four causes of action. The first two sought a divorce on the grounds of cruel and inhuman treatment and adultery. The third cause of action sought to set aside the February 12, 1971 separation agreement on the ground that the parties had resumed marital relations in July, 1971. The fourth cause of action sought to set aside the agreement on the ground that it attempted to relieve the husband of his liability to support his wife. Part of that cause of action specifically sought to nullify the reconveyance provision in paragraph EIGHTH and asserted that the provision is unconscionable and against public policy. The said allegation was contained in paragraph TWENTY-FIRST of the complaint dated August 18, 1972. An amended complaint in the divorce action, dated May 29, 1973, was subsequently served. The allegations of the first three causes of action were substantially identical to those contained in the first three causes of action of the original complaint. However, the fourth cause of action, while seeking cancellation of the *entire* separation agreement, was based upon allegations (a) that the wife was under psychiatric care at the time of the execution of the agreement and was coerced by the pressure of the circumstances in which she found herself, and (b) that the agreement was concluded on the basis of a lack of full and fair disclosure to her of her husband's assets. No direct reference to the "reconveyance" clause was made in the amended complaint. Mr. Justice Liff granted the wife a divorce and voided the *support provisions* of the separation agreement. In a decision dated November 30, 1973, he found that "In essence there were no negotiations between parties" and that "In the face of defendant's refusal to give a fair disclosure of his financial status plaintiff yielded, but could not give her free and willing consent". Mr. Justice Liff concluded that the husband's actions, in taking advantage of his wife's improvidence and state of health, amounted to " 'a species of fraud or duress' ". Nevertheless only the support provisions contained in paragraph TENTH of the agreement were set aside as void. Mr. Justice Liff held that the "invalidity does not permeate the agreement" and declined to disturb any of the other provisions. Neither party appealed from the resulting judgment. Subsequently, in October, 1975, the instant action was commenced by the plaintiff husband to enforce the reconveyance provision contained in paragraph EIGHTH of the separation agreement. Both parties moved, *inter alia,* for summary judgment and plaintiff's motion was granted by Special Term. The court referred to paragraph TWENTY-FIRST of the wife's (original) complaint in the divorce action and held that since Mr. Justice Liff had declined to void the entire separation agreement, he "Impliedly * * * found that plaintiff-wife in that action failed to prove paragraph TWENTY-FIRST of the complaint, and this decision binds the parties to that action." Thus, it was held that the wife was collaterally estopped from raising any defenses as to the enforceability of paragraph EIGHTH. While Special Term was in error in basing its decision on the wife's failure to prove paragraph TWENTY-FIRST of the *original* complaint, the result reached was nevertheless a sound one. Although it is unclear whether the issue of the validity of the reconveyance provision in the separation agreement was directly before the court in the divorce action, there is no doubt that the wife had sought to nullify the entire agreement. She was successful only in part and it is clear that paragraph EIGHTH of the separation agreement was declared to be valid by the decision of Mr. Justice Liff. No clarification was sought by the wife, nor was any appeal taken, and she cannot now relitigate that which she could have and did litigate in the divorce action. Nor can she now raise the question of whether the reconveyance provision of the agreement is against public policy. "A judgment in one

action is conclusive in a later one not only as to any matters actually litigated therein, but also as to any that might have been so litigated, when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first" *(Schuylkill Fuel Corp. v Nieberg Realty Corp.,* 250 NY 304, 306–307). This rule is based upon the principle that the public interest demands that a party not be heard a second time on a cause of action or an issue which he has already had an opportunity to litigate (5 Weinstein-Korn-Miller, NY Civ Prac, par 5011.07). Defendant contends, however, that it is plaintiff who is barred by the doctrine of *res judicata.* Defendant argues that "It is inconceivable that Mr. Justice Liff * * * would have ordered on the one hand, an increase in the support payment for the wife and on the other, taken from her a valuable property interest, i.e., a half interest in the marital home." While there is a certain appeal to that contention, it overlooks the fact that Mr. Justice Liff did not address himself to the question of ownership of the marital home. He simply voided one portion of the separation agreement, while expressly stating that the other portions were valid. Margett, Acting P. J., Rabin and Damiani, JJ., concur; Hawkins, J., dissents and votes to reverse the order insofar as it is appealed from, deny plaintiff's motion for summary judgment and grant defendant's cross motion for summary judgment, with the following memorandum: The separation agreement provides that in the event the wife brings an action "to cancel this agreement or applies to any court for [an] increase in her support payments, she hereby agrees to reconvey the said premises to herself and to the Husband as tenants in common." I disagree with the majority and do not believe that the late Mr. Justice Liff, in granting the divorce but voiding the support provision of the parties' separation agreement and holding that that "invalidity does not permeate the agreement", necessarily held valid all of the other provisions of the separation agreement, and, more particularly, paragraph EIGHTH thereof. The doctrine of *res judicata* is not applicable, for the validity or invalidity of the questioned paragraph was a matter only incidentally involved, if at all. Had Mr. Justice Liff passed upon that provision, it would have been, as it were, an anticipatory declaratory judgment based upon a hypothetical eventuality which may never have occurred. To sustain the applicability of the doctrine of *res judicata,* the issue must be directly rather than "incidentally or collaterally" involved. For a judgment to operate as *res judicata,* there must be a conclusive adjudication. "A judgment is not an estoppel as to all the litigated facts and all the evidence which a party may choose to introduce, but only as to the material facts which were in issue between the parties and necessarily bear upon, control, and are essential to the adjudication made, even though put in issue by the pleadings and directly decided" (9 Carmody-Wait 2d, NY Prac, § 63.207). Apart from the inapplicability of the doctrine of *res judicata,* I would hold the provision to be unenforceable as against public policy, for contracts which release or diminish a husband's obligation to support his wife are void (General Obligations Law, § 5-311; *Haas v Haas,* 298 NY 69; *Moat v Moat,* 27 AD2d 895). Additionally, the provision is unenforceable for it is not only *in terrorem,* but seeks to exact a penalty (see 14 NY Jur, Damages, § 156). Mollen, J., dissents and votes to reverse the order insofar as it is appealed from, deny the plaintiff husband's motion for summary judgment and grant the defendant wife's cross motion for summary judgment, with the following memorandum: A separation agreement was signed by the plaintiff husband and the defendant wife on February 12, 1971. Contained therein was a paragraph EIGHTH, which

provided for the conveyance by the husband to the wife of the former marital home, and which further provided that if she brought an action to cancel the agreement or applied for increased support payments, she would reconvey the home to herself and the husband as tenants in common. On or about August 18, 1972 the wife (the defendant herein) commenced an action by serving a complaint containing four causes of action. In the first two causes of action she requested a divorce predicated on the grounds of cruel and inhuman treatment and adultery. In the third cause of action the wife sought to have the separation agreement dated February 12, 1971 rescinded and set aside since she and her husband had resumed marital relations subsequent to the execution thereof. In the fourth cause of action the wife sought to set aside that provision of the separation agreement which prohibited her from bringing any action to cancel the separation agreement or apply to any court for an increase in her support payments unless she reconveyed a one-half interest in the marital residence to the husband. Such provision, the wife asserted, was "unconscionable and against the public policy of the State of New York" and she requested that the provision be declared null and void. The above-quoted allegation was contained in paragraph TWENTY-FIRST of the complaint. Subsequently, the wife served an amended complaint, dated May 29, 1973, which also contained four causes of action. The allegations contained in the first three causes of action were substantially the same as those contained in the first three causes of action in the wife's original complaint. In the fourth cause of action of the amended complaint, the wife requested that the separation agreement be canceled and set aside upon the grounds: (1) that she did not sign the separation agreement knowingly and voluntarily since she was not physically or emotionally capable of comprehending the facts and circumstances of her husband's financial condition; (2) that she was too ill to contest or negotiate said agreement; (3) that, based upon information and belief, her husband owned properties which had a current market value of $1,511,100; and (4) that said separation agreement was invalid, inequitable and unconscionable, and did not provide adequate support for her. The amended complaint contained no specific reference to paragraph EIGHTH of the separation agreement (the reconveyance provision). In a decision dated November 30, 1973 Mr. Justice Liff ruled that the wife was entitled to a divorce predicated upon the husband's cruel and inhuman treatment and his adulterous conduct, and upon the further ground that he had abandoned the wife in May, 1970. Mr. Justice Liff dismissed the third cause of action, holding that there had been no resumption of the marital relationship by the parties. Regarding the fourth cause of action, Mr. Justice Liff stated: "In her fourth cause of action she asked that the agreement be declared null and void for the reasons that at the time it was made she was physically and emotionally ill; that she was under the care of a psychiatrist; that she was not adequately advised; that the defendant and his attorney refused to disclose essential information which would have guided her in the negotiations for the agreement; and the agreement when made was 'unfair, inequitable, unjust, and unconscionable and did not and does not provide adequate support for the plaintiff.' (Amended verified complaint ¶ TWENTY-SEVENTH). *These allegations were amply sustained by the testimony.*" (Emphasis supplied.) Subsequently, the husband commenced the instant action in October, 1975, seeking enforcement of the reconveyance provision contained in paragraph EIGHTH of the separation agreement. Special Term granted the plaintiff husband's motion for summary judgment and denied defendant wife's cross motion for summary judgment. Special Term invoked the

doctrine of collateral estoppel and held that, in light of Mr. Justice Liff's decision, the "defendant-wife in this action is collaterally estopped from raising any defenses to its enforceability." Special Term in its decision and order specifically based this conclusion upon the erroneous assumption that Mr. Justice Liff had found that the wife had failed to prove her fourth cause of action in the prior case. Apparently overlooked by Special Term was the fact that there had been a substituted fourth cause of action in the amended complaint and that Mr. Justice Liff, contrary to Special Term's finding, had specifically found and held (referring to the fourth cause of action) that "these allegations were amply sustained by the testimony." My colleagues in the majority are in agreement that Special Term was in error in its assumption, but nevertheless hold that Special Term was correct in its invocation of the doctrine of collateral estoppel and affirm on the basis that Mr. Justice Liff had decided the issue as to the enforceability of the reconveyance provision of the separation agreement adversely to the defendant wife. In view of the fact that both Special Term and the majority of this court bottom their position totally upon Mr. Justice Liff's findings and decision, I will set forth those findings in far greater detail than I normally would so that the complete and accurate thrust of those findings becomes evident. Mr. Justice Liff's decision states, in relevant part: "The plaintiff is granted a divorce because of the defendant's cruel and inhuman treatment; his adulterous conduct; and his having abandoned the plaintiff in May of 1970. * * * "Plaintiff's complaint contains four separate causes of action. Her first request for a divorce is premised on cruel and inhuman treatment, the second on adultery. Although she did not ask for a divorce on the ground of abandonment, the proof in the trial was clear that the defendant left the marital home in May of 1970, without intention of returning and has remained away since. The Court may grant appropriate relief although not demanded (CPLR 3017 [a]; Matter of Abreu v. Abreu, 46 Misc 2d 942, 946, cf. Diemer v. Diemer, 8 N Y 2d 206, 211). Plaintiff is entitled to a judgment of divorce on all the grounds set forth in Domestic Relations Law § 170 (1), (2) and (4). * * * In her fourth cause of action she asked that the agreement be declared null and void for the reasons that at the time it was made she was physically and emotionally ill; that she was under the care of a psychiatrist; that she was not adequately advised; that the defendant and his attorney refused to disclose essential information which would have guided her in the negotiations for the agreement; and the agreement when made was 'unfair, inequitable, unjust, and unconscionable and did not and does not provide adequate support for the plaintiff.' (Amended verified complaint ¶ TWENTY-SEVENTH). These allegations were amply sustained by the testimony. * * * The parties were unfortunate in their marital relationship and their unhappiness grew as the years passed. * * * I find that the defendant demeaned her; that he boasted of his exploits with other women; that she loved him but that he was cool to her advances; that his leaving home and the attendant denial to her of his companionship and sexual relations; his refusal to support his family according to his means; his insistence that she use her resources to contribute to the support of the family, his neglect of her over a long period of time; his telling her that he did not enjoy her company and wished that he had not married her; affected her so that she was compelled to seek medical and psychiatric help; all of which findings support the conclusion that she should have a divorce for cruel and inhuman treatment. * * * The remaining cause of action which attacked the validity of the separation agreement consumed most of the time in approximately six days of trial. The main thrust of plaintiff's attack

on the separation agreement is that the support provisions (plaintiff's Exhibit 4 ¶ TENTH) for herself and the two children were inadequate in relation to the defendant's income and assets and the parties pre-separation standard of living. * * * The husband's obligation to furnish support arises from the marital relationship and it is a matter of State interest (see Haas v. Haas, 298, N. Y. 69, 71; General Obligations Law § 5-311). Although the courts will construe separation agreements in accordance with contract law (16 N Y Jur, Domestic Relations §§ 662, 678) still they will be carefully scrutinized because of the intimate relationship between the parties (Stahl v. Stahl, 221 N.Y.S. 2d 931, 947 [n.o.r.]; mod. 16 A D 2d 467) and will not be permitted to stand where they do not 'meet the standards of good faith and fair dealing required in such transactions.' (Stahl v. Stahl, supra, p. 947). * * * It has been stated that '[a] provision in a separation agreement for the support and maintenance of the wife is unfair and inequitable where it fails to make adequate provision for her needs. Such a provision is voidable and may be set aside * * *.' (19 Carmody-Wait 2d Section 117:14; also 16 N Y Jur, Domestic Relations § 671; 11B Zett-Edmonds-Schwartz, N Y Civ. Prac. § 44.06; Ripley v. Ripley, 30 A D 2d 782, affd. 24 N Y 2d 770; Almonte v. Almonte, 259 App. Div. 311, 312; Hungerford v. Hungerford, 161 N Y 550, 553 [where it was said that the agreement would be upheld 'only where the provision for the maintenance of the wife or children is suitable and equitable.']; Matter of Simmons v. Simmons, 63 Misc 2d 693, 694). To meet the tests the provision for the wife's support 'must be commensurate with the means of the husband, and the manner in which the parties have lived.' (19 Carmody-Wait 2d Section 117:14; also 16 N Y Jur, Domestic Relations § 671; 2 Law and the Family, Foster-Freed §§ 28:14, 28:15). We find that prior to leaving the marital home, defendant had not supported his family in accordance with his means and their needs. We have remarked that he gave her a meager allowance which he knew was inadequate to maintain the household and he persisted in the practice with the knowledge that she was compelled to resort to her capital resources for the difference. *The agreement which he made with her was designed to continue the pattern he had adopted. He gave her the home which he owned but that gesture was of limited benefit since it did not provide her with the funds to maintain the house except as she resorted to her inheritance which might be quickly exhausted.* Her psychiatrist testified that in February, 1971 she was moderately depressed by her matrimonial situation, that she was without hope and consumed by a need to please. It is uncontroverted that plaintiff and her counsel were expressly refused any information concerning defendant's financial position other than his 1970 tax return. However, to put the unpleasantness behind her and with a lingering hope that her husband would relent, against the advice of her counsel, she signed the agreement. At that time she knew very little concerning defendant's business activities and his financial position. In essence there were no negotiations between the parties. In fact the agreement was offered by the defendant with the implicit threat to 'take it or leave it'. In the face of defendant's refusal to give a fair disclosure of his financial status plaintiff yielded, but could not give her free and willing consent (Stahl v. Stahl, *supra*). Defendant took advantage of his wife's improvidence and state of health and in such circumstances it 'is regarded as a species of fraud or duress, upon the assumption that she is at the mercy of her husband.' (Nusbaum v. Nusbaum, 280 App. Div. 315, 319). There emerges a picture of a man who devoted his energies and resources to the development of his business activities and the improvement of his net worth. Although defendant's

family was not deprived of necessities they did sacrifice so that he could reinvest all available funds in the construction of residences and small industrial sites. * * * Under the provisions of the separation agreement plaintiff was to receive $75.00 per week for her support and maintenance and $25.00 per week for each child, a total of $125.00 per week and the defendant conveyed his interest in the marital residence to the plaintiff. Thus she was required to pay all household expenses from a weekly allowance of $125.00, just what she had been receiving when he made the mortgage payments and bore the costs for the automobiles. The defendant's frugality was revealed also by his lack of concern with the cost of financing his children's education. * * * 'Thus a separation agreement is invalid where the husband has failed to disclose to his wife the actual amount of his income and means so that she agrees to a provision for her support in an amount less than she might otherwise have obtained. The burden rests upon the husband to prove that the agreement was not procured by fraud, undue influence, unfair dealing, or coercion.' (2 Law and the Family, Foster-Freed § 28:7; Stahl v. Stahl, *supra* at p. 947). The defendant failed to come forward with any evidence to demonstrate that there was no unfair dealing and this Court concludes that the support provisions in the separation agreement are unfair and inequitable when they are equated with the means of the defendant and the pre-separation standard of living. Accordingly, the support provisions of the separation agreement dated February 12, 1971, are set aside as void. There is no necessity to void the entire agreement because of the invalid support provisions since that invalidity does not permeate the agreement (see 2 Law and the Family, Foster-Freed § 28:10; cf. 19 Carmody-Wait 2d Section 117:14; 16 N Y Jur, Domestic Relations § 671). * * * Plaintiff and her attorney did not negotiate the allowance with the defendant; plaintiff's health and mental attitude affected her ability to protect her interests and those of her children; and the agreement is inadequate in that it is not in accordance with the pre-separation standard of living (Riemer v. Riemer [31 AD2d 482, affd 31 NY2d 881] *supra*, p. 486)." (Emphasis supplied.) Mr. Justice Liff, in referring to the plaintiff husband's finances, after going into some detail, stated: "His refusal to disclose was tantamount to a declaration that there was much to conceal as indeed there was. Even in her distracted state defendant knew that she would not have signed had she known his true financial position. A great measure of fair dealing is required between a man and woman who have been married for twenty years. The plaintiff and the children are entitled to be maintained in accordance with the style of living that defendant established and not based upon his wealth (Millner v. Millner, 60 Misc 2d 122; Elkon v. Elkon, 59 Misc 2d 725). In accordance with that guide plaintiff is awarded the sum of $160.00 per week for her support and maintenance and $37.50 per week for each of the children making a total of $235.00 per week. Commencing as of November 16, 1973, and on Friday of each week thereafter said sum shall be mailed to her residence or any other address she may designate. Defendant may have credit for any sums paid since that date. This award to plaintiff and the children has been based more on the standard of living of the parties prior to their separation although the present means of the defendant have not been entirely disregarded. *Furthermore, although the elder son is away at school most of the time nevertheless the home must be maintained for him as well."* (Emphasis supplied.) It is rather difficult to perceive how these findings by Mr. Justice Liff can be construed and interpreted to be a declaration and an affirmation of the husband's right to compel a reconveyance of the former marital home to a tenancy in common between

the former husband and wife. Certainly, Mr. Justice Liff made no provision for a reconveyance in his decision or judgment. Such omission cannot be attributed to a lack of awareness on the part of Mr. Justice Liff since, in the findings and decision heretofore quoted, he twice referred directly to the prior conveyance of the marital home to the wife. Both Special Term and the majority premise their conclusion that Mr. Justice Liff sustained the validity of the reconveyance provision solely on the fact that, in the course of his findings, he stated, "there is no necessity to void the entire agreement because of the invalid support provisions since that invalidity does not permeate the agreement". Based upon that one sentence, Special Term concluded that Mr. Justice Liff had sustained the validity of that portion of paragraph EIGHTH of the separation agreement which provided for the right of reconveyance if the wife applied to any court for an increase in her support payments. However, that very same paragraph contains the provision for conveyance of the former marital home to the wife, subject to the then existing mortgage. If the sentence pertaining to the validity of the remainder of the agreement is considered in the context of the total findings and decision of Mr. Justice Liff, then, certainly, it would appear far more logical and reasonable that he had sustained the validity of the conveyance provision, rather than the reconveyance right of the husband. The fact remains that Mr. Justice Liff did not, either in his findings or judgment, refer to or provide for the reconveyance of the former marital home so as to create a tenancy in common. It is a further fact that if the husband validly had such a right, by the very terms of the separation agreement it arose immediately at the moment the wife commenced the action for divorce and for increased support. However, no counterclaim for reconveyance was asserted by the husband. Despite the lack of a counterclaim, the court clearly could have, if it had so intended, provided for a reconveyance in the course of its adjustments of the support provisions. Furthermore, it should be noted that Mr. Justice Liff was not reluctant to provide relief where he deemed it appropriate, even when such relief was not requested by the party entitled to that relief. In this regard, at the beginning of his decision, Mr. Justice Liff noted that the plaintiff wife requested a divorce on but two grounds: (1) cruel and inhuman treatment and (2) adultery. However, he went on to point out that "Although she did not ask for a divorce on the ground of abandonment, the proof in the trial was clear that the defendant left the marital home in May of 1970, without intention of returning and has remained away since. The Court may grant appropriate relief although not demanded". Mr. Justice Liff concluded by finding that the plaintiff wife was entitled to a judgment of divorce on the ground of abandonment, although not pleaded, as well as on the other two grounds. Thus, it must be concluded that if Mr. Justice Liff had intended to sustain the validity of the reconveyance provision, he would have done so clearly and unequivocally, and would have so provided in his judgment. The fact is that his findings and decision, when analyzed in total context, speak eloquently and clearly to the contrary. Mr. Justice Liff rendered his decision on November 30, 1973. Neither party appealed from the judgment entered upon Mr. Justice Liff's decision. In October, 1975 (almost two full years subsequent to that decision and, coincidentally, within days after Mr. Justice Liff's demise, thus rendering impossible the referral of the matter to him), the plaintiff husband commenced this action for specific performance to compel the wife to execute a deed reconveying to him a one-half interest in the marital home. This action is based upon the previously mentioned portion of paragraph EIGHTH of the separation agreement of February 12, 1971, which provided

for a reconveyance to the wife and husband as tenants in common if the wife brought an action to cancel the agreement or applied to a court for an increase in support payments. The defendant wife served an answer in which she set forth denials and three affirmative defenses, namely: *res judicata* and/or collateral estoppel; that the plaintiff's claim violated the public policy of the State of New York; and that that portion of paragraph EIGHTH which prohibited her from seeking to cancel the agreement or to obtain an increase in her support payments was void and/or voidable as being unconscionable and in violation of the statutory laws of our State. Both the plaintiff and the defendant herein moved for summary judgment at Special Term. As indicated heretofore, Special Term granted the plaintiff's motion for summary judgment, finding that the defendant wife had violated paragraph EIGHTH of the separation agreement by instituting her action to modify said agreement on or about August 18, 1972. Special Term in its decision stated: "This language specified the support provisions in the separation agreement as being the contents of paragraph TENTH. Thus, when Mr. Justice Liff set aside the support provisions as void, he set aside paragraph TENTH of [the] separation agreement. Significantly the decision goes on to state '[t]here is no necessity to void the entire agreement because of the invalid support provisions since that invalidity does not permeate the agreement (citation omitted).' *Impliedly, Mr. Justice Liff found that plaintiff-wife in that action failed to prove paragraph TWENTY-FIRST of the complaint, and this decision binds the parties to that action.* It follows that paragraph EIGHTH of the separation agreement is enforceable, and that defendant-wife in this action is collaterally estopped from raising any defenses to its enforceability." (Emphasis supplied.) Special Term was erroneously referring to the allegations contained in paragraph TWENTY-FIRST of the original complaint of the wife, which was not before Mr. Justice Liff for determination since she had served an amended complaint which contained an entirely different paragraph TWENTY-FIRST. Furthermore, a careful examination of the amended complaint discloses that it contains none of the allegations which had been contained in paragraph TWENTY-FIRST of the original complaint. The wife now appeals from the order of Special Term based upon the foregoing decision. I have sufficiently analyzed the facts and the prior decision of Mr. Justice Liff. Now I shall address myself to certain other legal and equitable principles which I believe additionally compel reversal. In *Columbia Corrugated Container Corp. v Skyway Container Corp.* (37 AD2d 845), the lessor, in 1970, brought an action against its lessee to recover on three causes of action, viz.: (1) counsel fees for services rendered in prior litigation between the parties; (2) additional rent allegedly due under the lease; and (3) additional counsel fees, as rent under the lease, for services rendered in the instant litigation. The facts underlying this action were as follows: In February, 1965 the plaintiff billed the defendant for $13,711.92 as additional rent due to increased taxes. The defendant refused to pay said sum and, in March, 1965, the defendant lessee sought a declaratory judgment with respect to its liability for such taxes. The lessor counterclaimed in that action for the $13,711.92. The lessor made no claim for counsel fees, although paragraph 40 of the sublease provided, in pertinent part: "In the event that it shall become necessary for landlord to enforce any provision of this agreement or for the collection of rent or additional rent, then * * * landlord shall be entitled as further additional rent all necessary disbursements including reasonable counsel fees required for the institution or maintenance of such actions or proceedings * * * which shall be paid on or before the next installment of rent thereafter to

become due." In the subsequent action brought by the lessor on the three causes of action set forth above, this court, in a unanimous memorandum decision, stated (37 AD2d 845, 846): *"The key issue surrounding the first cause of action is whether plaintiff's failure to claim attorney's fees in the prior litigation bars a claim for those fees now. We think it does.* Looking at the language of paragraph 40 of the sublease, we are of the view that plaintiff had the right to demand and recover reasonable counsel fees in the 1965 declaratory judgment action brought by the lessee. Such fees, as fixed by the court, were to be 'additional rent * * * which shall be paid on or before the next installment of rent thereafter to become due.' In other words, the amount became due at that time and should have been asserted in the counterclaim. Instead, plaintiff waited almost three years after the prior judgment was satisfied and two years after defendant vacated the premises before paying the fee and bringing this action. *This constituted a splitting of its cause of action and bars recovery now* (see *Roe v. Smyth,* 278 N. Y. 364; *Midland Bank v. Zuckerman,* 29 A D 2d 554; *Haviland & Co. v. Sphinx Import Co.,* 55 Misc 2d 448)." (Emphasis supplied.) (See, also, *Echo Bay Waterfront Corp. v City of New Rochelle,* 275 App Div 672.) In *Leonard Park Off. Plaza v P & P Sheet Metal Works* (46 AD2d 652) the plaintiff sued to recover damages resulting from defective installation by the defendant P & P Sheet Metal Works of an air conditioning and heating system for the plaintiff's building and for the defective manufacture of the said system by defendant International Telephone & Telegraph Corp. (ITT). Special Term granted the defendants' motion for "summary judgment dismissing the complaint". In a prior action between the plaintiff's nominee, LMC, and the defendants, which involved the foreclosure of ITT's mechanic's lien on plaintiff's building (the building was held in the name of LMC), the claims alleged in the plaintiff's complaint were adjudicated adversely to the plaintiff. In a unanimous memorandum decision this court stated (pp 652–653): "In addition to the authorities referred to by Mr. Justice Marbach, as supportive of his determination, we refer to *Schuylkill Fuel Corp. v. Nieberg Realty Corp.* (250 N. Y. 304, 306, 307) and *S. T. Grand, Inc. v. City of New York* (32 N Y 2d 300, 304). In those determinations, the Court of Appeals expounded the policy of this State that, *where an issue was litigated or might appropriately have been litigated in a prior action, the determination in the prior action bars relitigating* the issue in a subsequent action. * * * The complaint in the foreclosure action, served in January, 1972, alleged *inter alia* that ITT had fully performed its contractual obligations and that ITT had completed its last service thereunder (testing of the equipment on March 3, 1971) within a reasonable time after the notice of lien was prepared. Since plaintiff, through its nominee LMC, admitted those allegations in the lien foreclosure complaint (by failing to deny them) *and failed to assert any claim concerning alleged defective manufacture or installation of any of the equipment, the judgment in that action bars plaintiff from seeking to litigate that claim in this action"* (emphasis supplied). In *Leonard Park Off. Plaza v P & P Sheet Metal Works* (51 AD2d 537) the plaintiff brought an action to recover damages for the negligent adjustment, balancing, etc., of a heating and air-conditioning system. Special Term granted the defendant's motion to dismiss the complaint on the ground that the claims asserted therein were barred by the doctrine of *res judicata.* This court affirmed the order and, in a unanimous memorandum decision, stated (p 538): "As we noted therein *[Leonard Park Off. Plaza v P & P Sheet Metal Works,* 46 AD2d 652], where an issue was litigated, or *might appropriately have been litigated,* in a prior action, the determination in the prior action

bars relitigation of the issue in a subsequent action *(Grand, Inc. v City of New York,* 32 NY2d 300, 304; accord, *Schwartz v Public Administrator of County of Bronx,* 25 NY2d 65; *Schuylkill Fuel Corp. v Nieberg Realty Corp.,* 250 NY 304).* Plaintiffs' attempt to assert claims postdating the decision in the earlier lien foreclosure action (which was the bar to the action in *Leonard Park Office Plaza v P & P Sheet Metal Works, supra)* evidences a misunderstanding of the doctrine of *res judicata.* It is our prior determination which now bars the instant action" (emphasis supplied). In this regard, it should be noted that in the prior action brought by the wife herein for divorce and for increased support, the husband served a verified answer which, in addition to denials and admissions, set forth two affirmative defenses and a counterclaim, although the counterclaim was subsequently withdrawn. The husband failed and neglected to assert a counterclaim for reconveyance, although concededly his right, if any, to do so enured to him immediately upon the commencement of the wife's action. Instead, the plaintiff husband waited almost two years after the prior decision was rendered in his wife's action to bring the within cause of action. This clearly constitutes a splitting of his cause of action and bars his claim for such relief at this time (see *Columbia Corrugated Container Corp. v Skyway Container Corp., supra; Leonard Park Off. Plaza v P & P Sheet Metal Works, supra* [both cases]). A further equitable principle militates against granting the plaintiff husband the relief he presently seeks. In opposing his wife's prior action for divorce and increased support payments, he made the following argument in a trial memorandum submitted on his behalf: "The Plaintiff states that the conveyance of the residence cannot be considered in determining the validity of the agreement. While it is agreed that a lump sum agreement supported solely by such a conveyance without provision for regular support would violate the statute, it is submitted that the conveyance is a factor which must be considered along with all the other circumstances in determining the reasonability of the actions of the parties. The argument that the sale of the premises would not be reasonable should be examined. Plaintiff claims that it costs her in excess of $600.00 per month to maintain the house. It is a luxery *[sic]* house with four bedrooms, etc. The oldest son is away at school, and the house is occupied by the wife and a 16 year old son. Extremely suitable rental quarters could be obtained for $600.00 a month and a substantial profit realized in the sale of the house which could be applied to her support." Clearly, a wife's ownership of real property is a factor which is to be considered in determining the amount of support, if any, to which she is entitled *(Slocum v Slocum,* 42 AD2d 56). Thus, in order to convince Mr. Justice Liff to keep the support payments low, the husband argued that since the wife owned the home, she could sell it, invest the proceeds from the sale and thereby obtain additional income with which she and the children could live. Clearly, the plaintiff husband is attempting to have it both ways; when it served his purposes in the prior action, he urged and utilized his wife's ownership of the house to his own benefit. Now, in the instant action, he asserts his claim to a one-half interest in the house. "A third doctrine, related to both former adjudication and election of remedies, estops litigants from assuming inconsistent positions in successive lawsuits. This form of estoppel is in no way based upon a policy against multiple litigation; it is premised on considerations of good faith and a belief that *consistency* on the part of litigants is essential for the maintenance of the dignity of the court" (5 Weinstein-Korn-Miller, NY Civ Prac, par 5011.09, p 50-76; emphasis supplied). In addition to the foregoing reasons, another reason exists for reversal. I would hold the reconveyance

provision to be unenforceable as against public policy. Contracts which release or diminish a husband's obligation to support his wife are void (General Obligations Law, § 5-311; *Haas v Haas,* 298 NY 69; *Moat v Moat,* 27 AD2d 895). Additionally, the provision is unenforceable for it is not only *in terrorem,* but seeks to exact a penalty (14 NY Jur, Damages, § 156; *Kroll v Kroll,* 4 Misc 2d 520). In this regard the court, in the case of *Pellman v Pellman* (88 Misc 2d 251), had before it for consideration a provision in a separation agreement which read (p 252): " 'If the Wife should ever institute a legal proceeding in her own behalf or in behalf of the children by which she seeks to increase the aforesaid monthly payments for the support and maintenance of the children, she agrees to a reduction in the payments made to her hereunder for her support and maintenance by an amount equal to the total increase obtained for the children.' " After the separation agreement was executed, the wife applied successfully to the court for an increase in the children's support. Subsequently the husband commenced an action for a judgment declaring that such provision was valid and binding. Both sides moved for summary judgment and the court granted the wife's motion and declared the provision null and void. In so doing, Mr. Justice Gellinoff aptly stated, in part (pp 253–254): "The law does not construe separation agreements by the same rules it applies to other contracts. The parties to separation agreements do not have absolute freedom to contract, for the subject matter of their agreements is the marital relation, in which the State has an especial interest. * * * Subdivision (e) of section 4 of the instant agreement is even more repugnant to public policy than the provision found invalid in *Haas [Haas v Haas,* 298 NY 69]. For not only does this section purport to base a reduction in support payments for defendant on subsequent conduct not fairly or reasonably related to the marriage relationship, but it punishes her financially for attempting to secure more reasonable support for the parties' children. Thus, subdivision (e) of section 4 both attempts to relieve plaintiff of a portion of his obligation to support defendant, and, additionally, seeks, at least indirectly, to minimize his obligation to support his children. This the parties may not by contract accomplish *(Moat v Moat,* 27 AD2d 895, 896; *Matter of 'Smith' v 'Jones',* 43 Misc 2d 350, 353)." Finally, I find that the plaintiff's cause of action is totally devoid of merit for another reason. The equitable doctrine of "clean hands" is set forth in New York Jurisprudence as follows (20 NY Jur, Equity, §§ 102, 103): "A court of equity in its endeavors to maintain, promote, and enforce the interests of justice, stringently demands good faith, fairness, and uprightness from the litigant parties who come before it either as plaintiffs or defendants. Such salutary and basic rule is stated in the form of an ancient and most favored precept or maxim that he who comes into equity must come with clean hands or 'he that hath committed iniquity shall not have equity.' A party who comes into court with unclean hands, seeking relief in equity to be granted by the affirmative exercise of the power of equity, will be denied relief. Equity should deny him its relief leaving him to pursue whatever cause of action he may have by invoking a remedy at law." "§ 103. Meaning, rationale, and purpose of maxim. Fundamentally, the 'clean hands' maxim was conceived in equity to permit it to refuse to lend its aid in any manner to one seeking its active interposition who has been guilty of unlawful, unconscionable, or inequitable conduct in the matter with relation to which he seeks relief. 'Clean hands' is a legal euphemism which refers to the acceptability, cleanliness, and decency of the claim put forth. It means that a claim tainted with deceit and impurity of motive, which if of decent character would perhaps receive approval, will

unhesitatingly be ignored. The maxim assumes that the suitor, asking the aid of a court of equity, has himself been guilty of conduct in violation of the fundamental conception of equity jurisprudence, and therefore the court refuses him all relief with reference to the subject matter or transaction in issue. It means that whenever a party who seeks to set the judicial machinery in motion and obtain some equitable remedy has violated conscience or good faith, or other equitable principle in his prior conduct with reference to the subject in issue, the doors of equity will be shut against him notwithstanding the defendant's conduct has been such that in the absence of circumstances supporting the application of the maxim, equity might have awarded relief." The "clean hands" doctrine applies to all equity actions or proceedings, including a suit for specific performance (55 NY Jur, Specific Performance, §§ 30, 47). In the instant case Mr. Justice Liff found that the plaintiff husband had been, to put it mildly, far from an ideal spouse. Rather, Mr. Justice Liff found that the plaintiff had been cruel and inhuman in the treatment of his wife; that he had committed adultery; that he had abandoned his wife and children; that he had been cruel and inhuman in providing for the needs and educational support of his children; that he had been meager in supporting his family; that "Defendant took advantage of his wife's improvidence and state of health and in such circumstances it 'is regarded as a species of fraud or duress, upon the assumption that she is at the mercy of her husband' (Nusbaum v. Nusbaum, 280 App. Div. 315, 319)"; and that, while he had been neglecting his family, the plaintiff, for his own individual gain, had amassed a considerable sum of money. Mr. Justice Liff further stated in his decision that he was unable to ascertain the true extent of the plaintiff husband's wealth because of the concealment engaged in by the husband and that such determination could not be reached without obtaining the services of a skilled accountant. Thus, clearly, plaintiff comes before the court with "unclean hands." In the light of Mr. Justice Liff's findings and decision, to grant the plaintiff husband the equitable relief he presently seeks (ironically, on the basis of Mr. Justice Liff's decision) would constitute a mockery of justice. To such a result I cannot agree. Therefore, I would reverse the order insofar as it is appealed from, deny the motion of the plaintiff for summary judgment and grant the defendant's cross motion for summary judgment.