OPINION OF THE COURT
 

 Rosenblatt, J.
 

 Certain types of not-for-profit entities must obtain judicial approval before selling the bulk of their assets
 
 (see
 
 Not-For-Profit Corporation Law [N-PCL] § 510 [a] [3]; § 511). In the case before us, a not-for-profit hospital sought to sell its assets to a real estate developer and another hospital. The contract called for the hospital to reimburse the developer for out-of-pocket expenses in an amount up to $800,000 should the hospital fail to obtain judicial approval of the proposed sale. Supreme Court disapproved the sale.
 

 In a subsequent action in which the buyers sought damages under the reimbursement provision, the lower courts concluded that judicial disapproval of the sale rendered the entire contract inoperative, including the provision for reimbursement. We hold that where, as here, the court disapproves a sale transaction of this type, it must also address reimbursement or similar provisions under the N-PCL 511 (d) standard, to determine whether the provision is fair, reasonable and in furtherance of the not-for-profit’s purpose.
 

 I.
 

 Manhattan Eye, Ear & Throat Hospital (MEETH), a not-for-profit specialty care hospital, operates principally out of three buildings located on East 64th Street. MEETH’s certificate of incorporation describes its corporate purpose:
 

 “to
 
 establish, provide, conduct, operate and maintain a hospital in the City, County and State of New
 
 *588
 
 York for the general treatment of persons suffering from acute short-term illnesses; performing general plastic surgery; treating persons suffering from diseases of the eye, ear, nose or throat; and maintaining a school for post-graduate instruction in the treatment of such illnesses, performing such surgery, and the treatment of such diseases, and conducting associated and basic research.”
 

 Throughout the 1990’s, MEETH experienced financial difficulties, and in 1999 decided to sell the buildings on 64th Street and close the hospital. It planned to sell one building to Memorial Sloan-Kettering Cancer Center for medical purposes and the others to plaintiff 64th Associates (Associates) for apartments.
 

 Because the contract involved the sale of most of its assets, MEETH needed judicial approval pursuant to the Not-For-Profit Corporation Law
 
 (see
 
 N-PCL 510 [a] [3]).
 
 [1]
 
 As required by statute, MEETH petitioned Supreme Court and notified the Attorney General
 
 (see
 
 N-PCL 511 [a] [9]; [b]). The court allowed the purchasers to appear as intervenors supporting the sale. The Attorney General opposed it.
 

 Following a 13-day evidentiary hearing, Supreme Court refused to approve the transaction and denied MEETH’s petition. In a comprehensive writing, the court concluded that the proposed agreement was not fair and reasonable to the hospital because it failed to take the hospital’s business value into account and sought only to “monetize” the real estate, despite offers from other entities that would preserve the hospital.
 
 [2]
 
 The court also noted that MEETH’s plan to close its doors as an acute care, research and teaching hospital and open diagnostic and treatment centers in Brooklyn and Harlem worked a fundamental change in its corporate purpose.
 

 
 *589
 
 After the court disapproved the transaction, Associates sought return of its down payment and reimbursement for expenses pursuant to the contract’s “termination-payment provision,” which provides that:
 

 “Purchaser shall have, as its sole and exclusive remedy, the right to have the Deposit returned along with accrued interest as well as be reimbursed for its out-of-pocket costs associated with this transaction up to a maximum of $200,000 in the aggregate with respect to MSKCC and $1,400,000 in the aggregate with respect to [Associates];
 
 provided, however,
 
 that if [Associates] terminates the [Associates] Contract as a result of Seller not obtaining initial judicial approval ... on or before June 30, 2000, then the $1,400,000 reimbursement shall be decreased by $600,000 to a total aggregate of $800,000.”
 

 MEETH returned the deposit but refused to reimburse expenses, arguing that the court’s disapproval nullified the entire contract.
 
 [3]
 

 Associates brought this breach of contract action for reimbursement under the above-quoted provision. Supreme Court granted MEETH’s motion to dismiss, holding that “[a]bsent judicial approval of a sale, the contract for sale never came into existence and is inoperative.” The Appellate Division affirmed, deeming Associates’ arguments as “contrary to the purposes of the statute—to protect charitable organizations from loss through unwise bargains.” (301 AD2d 462 [2003].) We granted leave to appeal, and for the reasons stated below, reverse and remit to Supreme Court.
 

 II.
 

 Ordinarily, courts are not involved in the oversight or approval of contracts and will enforce them unless illegal, against
 
 *590
 
 public policy or deficient in some other respect.
 
 [4]
 
 The law is different in the case of not-for-profit entities. A chief difference is that not-for-profits, unlike their for-profit counterparts, by definition and concept do not have shareholders to whom profits are distributed.
 
 [5]
 
 Given the absence of shareholders, profits and other market devices to ensure the efficacy of contracts and regularity of operations, the statute contemplates significant public oversight of the finances and major transactions of such entities.
 
 [6]
 

 When a not-for-profit corporation seeks to sell all or substantially all of its assets, N-PCL 510 and 511 set forth the procedure designed to “preserve charitable assets to serve public purposes” (Bjorklund, New York Nonprofit Law and Practice § 8-2 [a], at 238 [1997]). Thus, a Type B or Type C corporation must obtain leave of Supreme Court to enter into such a disposition
 
 (see
 
 N-PCL 510 [a] [3]). In its determination, Supreme Court must assess whether “the consideration and the terms of the transaction are fair and reasonable to the corporation and that the purposes of the corporation or the interests of the members will be promoted” (N-PCL 511 [d];
 
 see Church of God of Prospect Plaza v Fourth Church of Christ, Scientist, of Brooklyn,
 
 76 AD2d 712, 716 [2d Dept 1980],
 
 affd
 
 54 NY2d 742 [1981]). Moreover, the Legislature required that the Attorney General be notified so as to represent the public interest.
 
 [7]
 

 
 *591
 
 Associates argues that the statute—and its requirement for judicial approval—governs only the sale of the assets, and not the reimbursement provision of the contract. We disagree. N-PCL 511’s requirements apply to the contract as whole. The statutory language does not limit the court to a narrow review of the contract, and plainly requires that it examine “the consideration and the terms of the transaction” (N-PCL 511 [d]), which include all facets of the agreement.
 

 We hold that any termination-payment clause or similar damages or reimbursement provision in a sales transaction of this kind should be reviewed under the N-PCL 511 standard of fairness, reasonableness and furtherance of corporate purpose. As the Attorney General urges in his amicus brief, provisions of this type may be valuable to not-for-profits, permitting their boards to negotiate beneficially. At the same time, judicial scrutiny protects not-for-profit organizations against board actions that might be adverse to the entity’s well-being.
 

 Here, the lower courts did not examine the reimbursement provision under the N-PCL 511 (d) standard. Instead, Supreme Court held that “[a]bsent judicial approval of a sale, the contract for sale never came into existence and is inoperative.” In affirming, the Appellate Division also concluded, in essence, that judicial disapproval of the sale automatically nullified the reimbursement provision. Moreover, in his denial of the motion for clarification (following the initial proceeding disapproving the sale of the hospital) Justice Fried stated that the validity of the reimbursement clause had not been before him.
 

 MEETH and the Attorney General contend that there is enough in the record for us to conclude as a matter of law that the reimbursement provision does not meet the N-PCL 511 (d) standard. According to the Attorney General, Associates is claiming reimbursement of over $950,000 for expenses including architects, structural and mechanical engineers, environmental consultants, facade specialists, land use attorneys, zoning consultants and expediters. He argues that “[i]t is hard to imagine a good reason for the MEETH Board to agree to such a term, which allowed Associates and [Memorial Sloan-Kettering
 
 *592
 
 Cancer Center] together to incur up to $1.6 million in expenses risk-free, while obtaining the East 64th Street property at a fire-sale price.”
 

 While these contentions are cogent, it would be improvident of us to make a legal determination as to the efficacy of the reimbursement provision, considering that neither the parties nor the courts below have addressed it under N-PCL 511 (d) criteria. Thus, we reverse and remit so that Supreme Court may determine, under N-PCL 511 (d), whether the reimbursement provision was fair and reasonable and in furtherance of the not-for-profit’s corporate purpose.
 

 In future cases reimbursement provisions or similar clauses should be reviewed, whenever appropriate, in the same proceeding and under the same standard in which the court is asked to approve the sale. Moreover, our remand should not be taken as an occasion for a lengthy and drawn-out process. Over a 13-day period, Justice Fried conducted an extensive review of the relevant background and made a great many findings and conclusions. If additional proof is necessary for the court to address the validity of the reimbursement provision, we are confident that the court will hear it expeditiously, and with the same sensitivity it has shown, recognizing that the entity involved is a not-for-profit corporation.
 

 The parties’ remaining arguments are without merit.
 

 Accordingly, the order of the Appellate Division should be reversed, without costs, and the matter remitted to Supreme Court for further proceedings in accordance with this opinion.
 

 Chief Judge Kaye and Judges G.B. Smith, Ciparick, Graffeo, Read and R.S. Smith concur.
 

 Order reversed, etc.
 

 [1]
 

 . Under N-PCL, there are four types of not-for-profit corporations: Types A, B, C and D
 
 (see
 
 N-PCL 201 [b]; Joint Legis Comm to Study Revision of Corporation Laws, Explanatory Mem No. 1 on Not-For-Profit Corporation Law, McKinney’s Cons Laws of NY, Book 37, at XV). N-PCL 510 (a) (3) mandates that Type B and C not-for-profits receive judicial approval of contracts to sell all or substantially all of their assets. MEETH is a Type B corporation, one of a species organized for charitable, educational, religious, scientific, literary or cultural purposes or for the prevention of cruelty to children or animals
 
 (see
 
 N-PCL 201 [b];
 
 see also
 
 1 Phelan, Nonprofit Enterprises: Corporations, Trusts, and Associations § 1:45, at 1-54).
 

 [2]
 

 .
 
 Matter of Manhattan Eye, Ear & Throat Hosp, v Spitzer,
 
 186 Misc 2d 126 (Sup Ct, NY County 1999).
 

 [3]
 

 . Intervenor Lenox Hill Hospital (which assumed sponsorship of MEETH and became its sole corporate member) subsequently moved for clarification of Supreme Court’s denial of MEETH’s petition, and sought a declaration that the disapproval rendered the entire sales contract—including the reimbursement provision—unenforceable. Supreme Court denied the application, noting that because the parties did not raise the issue it had “no occasion to consider these now-disputed specific provisions of the sales contract.”
 

 [4]
 

 .
 
 See e.g. Szerdahelyi v Harris,
 
 67 NY2d 42, 48 (1986);
 
 McConnell v Commonwealth Pictures Corp.,
 
 7 NY2d 465, 469 (1960);
 
 see also
 
 Restatement (Second) of Contracts §§ 178-199; 5 Williston, Contracts § 12:1
 
 et seq.
 
 (4th ed).
 

 [5]
 

 .
 
 See
 
 N-PCL 102 (a) (5); 204, 508, 515;
 
 see also
 
 Boyd,
 
 A Call to Reform the Duties of Directors Under State Not-For-Profit Corporation Statutes,
 
 72 Iowa L Rev 725, 730 n 52 (1987).
 

 [6]
 

 .
 
 (See generally
 
 Fishman,
 
 Improving Charitable Accountability,
 
 62 Md L Rev 218, 233 [2003]; Sasso,
 
 Searching for Trust in the Not-For-Profit Boardroom: Looking Beyond the Duty of Obedience to Ensure Accountability,
 
 50 UCLA L Rev 1485, 1487-1488 [Aug. 2003].) The financial operations of not-for-profits have accounted for a sizeable and growing share of our nation’s economic activity
 
 (see
 
 Hansmann,
 
 The Role of Nonprofit Enterprise,
 
 89 Yale LJ 835 [1980]). As of 2000, not-for-profit organizations held $1.6 trillion in assets (an eight percent increase from 1999), and reported $866.2 billion in revenue
 
 (see
 
 Arnsberger,
 
 Charities and Other Tax-Exempt Organizations, 2000,
 
 Statistics of Income Bulletin, US Government Printing Office [fall 2003], available at <http://www.irs.gov/pub/irs-soi/00eochin.pdf> [accessed May 20, 2004]).
 

 [7]
 

 . The Not-For-Profit Corporation Law provides for state or judicial involvement in many aspects of regulation and governance. For example, judicial approval is required for the merger or consolidation of not-for-
 
 *591
 
 profit entities
 
 (see
 
 N-PCL 907). N-PCL also grants the Attorney General standing to maintain several types of actions against not-for-profit corporations, such as to dissolve a not-for-profit if it has acted fraudulently, ultra vi-res or was not duly formed; to sue directors for violations of their duties of care, loyalty and obedience; and to enforce any right given to members, directors or officers
 
 (see
 
 N-PCL 112 [a];
 
 see generally
 
 Note, New York’s Not-For-Profit Corporation Law, 47 NYU L Rev 761 [1972]).