Rockwell v Despart (2022 NY Slip Op 06971)

Rockwell v Despart

2022 NY Slip Op 06971

Decided on December 8, 2022

Appellate Division, Third Department

Garry, P.J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 8, 2022

533476 533477 533985

[*1]Elizabeth Haley Rockwell, as Executor of the Estate of Marjorie D. Rockwell, Deceased, Appellant,
v
Thomas Despart, Respondent. Letitia James, as Attorney General of the State of New York, Proposed Intervenor-Appellant. (Action No. 1.)
Elizabeth Haley Rockwell, as Executor of the Estate of Marjorie D. Rockwell, Deceased, et al., Appellants,
v
The Audubon Society of New York State, Inc., Respondent, et al., Defendants. (Action No. 2.)

Calendar Date:October 11, 2022

Before: Garry, P.J., Clark, Aarons, Pritzker and Fisher, JJ.

Gleason, Dunn, Walsh & O'Shea, Albany (Richard C. Reilly of counsel), for Elizabeth Haley Rockwell, appellant.
The Baynes Law Firm, PLLC, Ravena (Brendan F. Baynes of counsel), for Thomas Despart, respondent.
Whiteman Osterman & Hanna LLP, Albany (Christopher M. McDonald of counsel), for The Audubon Society of New York State, Inc., respondent.
Letitia James, Attorney General, Albany (Kate H. Nepveu of counsel), for proposed intervenor-appellant in action No. 1 and in her capacity under EPTL 8-1.1 (f) in action No. 2.

Garry, P.J.
Appeals (1) from an order of Supreme Court (Peter A. Lynch, J.), entered May 7, 2021 in Albany County, which, in action No. 1, denied the Attorney General's motion to, among other things, intervene, and (2) from an order of said court, entered April 28, 2021 in Albany County, which, in action No. 2, among other things, upon reargument, adhered to its prior decision partially granting a motion by defendant the Audubon Society of New York State, Inc., to dismiss the complaint against it.
These actions, concerning certain restrictive covenants, stem from a charitable bequest made by the Estate of Marjorie D. Rockwell, which has been the subject of two prior appeals (205 AD3d 1165 [3d Dept 2022] [action No. 1]; Gorman v Despart, 164 AD3d 1059 [3d Dept 2018], lv dismissed 32 NY3d 1193 [2019]). As relevant here, the last will and testament of Marjorie D. Rockwell (hereinafter decedent) authorized her executors, including plaintiff Elizabeth Haley Rockwell (hereinafter Rockwell), to, in their discretion, (1) grant to one or more "qualified organization[s]" (Internal Revenue Code § 170 [h] [3]) one or more historical preservation or conservation "restriction[s]" (Internal Revenue Code § 170 [h] [2] [C]; see Internal Revenue Code § 2055 [f]) in and to all or any part of her real property, (2) convey any or all of said property to one or more charitable or not-for-profit organizations, including for no consideration, upon such restrictions, and/or (3) convey any or all of said property for its fair market value, subject to any such restrictions as the executors may impose thereon, to one or more persons or organizations, including one or more adjoining landowners, with the proceeds of any such sale(s) added to the estate's residue, which, in turn, was to be distributed to named charitable organizations in accordance with a trust created by decedent. The executors were also expressly authorized to establish one or more endowments that may be necessary to enforce the terms of any such restrictions or to provide for the maintenance and upkeep of property if conveyed.
The executors thereafter entered into discussions with the Audubon Society of New York State, Inc., a charitable corporation (see generally N-PCL 201 [c]), to establish a bequest. In 1997, the parties agreed that the Estate would convey decedent's property to the Audubon Society as three parcels, each with separate deeds subject to individual conditions. Parcel A, consisting of approximately nine acres and decedent's house, would be conveyed for the purpose of furthering the mission of the Audubon Society, with the house anticipated to be used for executive offices, a research library and event space; if the Audubon Society obtained a variance permitting it to so use the house, or established that a variance was not needed, then it would also be provided an endowment. The Estate expressly placed no restriction on the sale of parcel A, except that, if sold, it could only be sold for use as a single[*2]-family dwelling. Parcel B, consisting of approximately 26 acres of undeveloped land, was to be conveyed with the restrictions that the parcel remain "forever wild" and "be used as a research, education and management area for urban wildlife conservation and water resource protection[, with] [n]o new permanent structures greater than 100 square feet . . . constructed on the premises, excluding necessary and accessory use structures to carry out research and education projects and programs for urban wildlife management and water resource conservation efforts." Parcel C, consisting of approximately 7.5 acres of vacant land, was to be deeded to the Audubon Society for the furtherance of its mission, the deed carrying "the restriction that[,] if sold, [parcel C] can only be subdivided into two lots." In 1998, the parcels were conveyed subject to these restrictions. The deed for parcel B also included a restriction that the property be used to further the mission of the Audubon Society. The Estate also subsequently distributed an endowment to the Audubon Society.
The Audubon Society sold parcel A and parcel C in 2001 and 2002, respectively, subject to all enforceable covenants and restrictions. Following each sale, corrective deeds were issued by the Estate expressly stating that no purchaser of parcel A or parcel C from the Audubon Society was required to use the property to further its mission. Meanwhile, no action was taken with respect to the Audubon Society's plan for the ecological restoration of parcel B. In 2013, parcel B was sold to Thomas Despart, an adjoining property owner. The 2013 deed contained all the same restrictions as the 1998 deed, but, unlike the other two parcels, no corrective deed for parcel B was ever issued.
Following the 2013 conveyance, Despart allegedly undertook actions in contravention of the forever wild restriction in his chain of title. In 2014, the owners of parcel A commenced an action against him seeking to enjoin his alleged disruption of parcel B. That action was dismissed for lack of standing in 2017 (Gorman v Despart, 164 AD3d at 1060-1062), prompting Rockwell to obtain amended letters testamentary permitting her to bring the instant actions on behalf of the Estate.
In 2019, Rockwell commenced action No. 1 seeking a declaration that Despart is bound by the forever wild restriction and that said restriction requires parcel B to be forever maintained as an ecological preserve and thus prohibits Despart from destroying, removing or otherwise disturbing vegetation thereon. Following joinder of issue, Rockwell moved for partial summary judgment as to the desired declaration, and Despart cross-moved for summary judgment extinguishing the restriction. Supreme Court (Connolly, J.) denied those motions in all relevant respects. Upon Despart's appeal, this Court upheld that determination (205 AD3d at 1169).
In 2020, Rockwell commenced action No. 2 seeking declaratory and equitable relief in the form of an accounting [*3]of the Audubon Society's use of the endowment and disgorgement of same along with the right to enforce the forever wild restriction and delivery of said assets and right to another qualified organization. Rockwell also sought damages related to the Audubon Society's allegedly fraudulent inducement with respect to the 1998 conveyances, breach of various contractual and fiduciary obligations owed to the Estate, unjust enrichment and monies had and received. The Audubon Society later moved to dismiss the complaint against it, arguing, as relevant here, that the factual events giving rise to Rockwell's claims all occurred beyond the longest applicable limitations period. Supreme Court partially agreed, dismissing Rockwell's causes of action for fraud and any portion of Rockwell's remaining causes of actions that sought "recission/ 'disgorgement and delivery'" of real property having been conveyed in 2013 or earlier. However, based upon the continuing wrong doctrine, Rockwell was permitted to proceed with all remaining aspects of her causes of action. The Audubon Society accordingly joined issue.
Thereafter, the Attorney General, relying on her authority to represent the beneficiaries of dispositions of property for charitable purposes and oversee not-for-profit corporations, moved to intervene in both actions, to consolidate same and to add certain necessary and/or permissive parties. The Attorney General also sought leave to reargue the partial grant of the Audubon Society's motion to dismiss, asserting that Supreme Court had overlooked that, because the Audubon Society conveyed parcel B without first obtaining cy pres relief permitting it to allegedly deviate from the foregoing gift restrictions, the 2013 deed was void ab initio and, thus, the challenge to the conveyance could not be time-barred. In her proposed intervenor's complaint, the Attorney General sought, among other relief, a declaration that the 2013 conveyance was a nullity given the alleged violations of N-PCL 513 (b) and EPTL 8-1.1 (c) (1), or, alternatively, recission of the deed for said violations, and, in either scenario, transfer of parcel B and the endowment to an appropriate land trust organization.
With respect to action No. 2, Supreme Court (Lynch, J.) permitted the Attorney General to intervene and directed that certain former officers of the Audubon Society be added as defendants therein, but the court otherwise denied the Attorney General's motion, concluding that the 2013 deed was not a nullity and thus adhering to the prior determination that any challenge to the conveyance was time-barred.[FN1] The court therefore also found that there was no need to join Despart and his son as parties to action No. 2. The Attorney General's request to consolidate was also denied, in light of the breadth of issues in action No. 2 in comparison to the narrow question presented in action No. 1. With respect to action No. 1, the court denied the Attorney General's motion in its entirety, further [*4]reasoning that parcel B was no longer an asset of the Audubon Society and, thus, the Attorney General had no authority to enforce the subject restrictive covenant. The Attorney General and Rockwell appeal.
As a preliminary matter, the Audubon Society maintains, as an alternative ground for affirmance (see Parochial Bus Sys. v Board of Educ. of City of N.Y., 60 NY2d 539, 545-546 [1983]), that the Attorney General's reargument motion was fundamentally improper as it was based upon a new legal theory not advanced on the underlying motion — that the 2013 conveyance was void ab initio absent cy pres relief authorizing same. Rockwell had made no such argument in opposition to the Audubon Society's motion to dismiss, arguing instead that the Audubon Society's obligations to the Estate are ongoing and that additional time is permitted for recently discovered fraud. Further, unlike the relief sought by the Attorney General, Rockwell had not sought to set aside the 2013 conveyance.[FN2] Nonetheless, granting the Attorney General's request to intervene in action No. 2 resulted in putting the Attorney General's declaratory and recission claims before the court — claims that, by virtue of the partial grant of the Audubon Society's motion, would have already been deemed time-barred. Given these circumstances, Supreme Court's decision to entertain the merits of the Attorney General's reargument motion was not an abuse of discretion (see Custom Topsoil, Inc. v City of Buffalo, 12 AD3d 1162, 1164 [4th Dept 2004]; Epstein v Lenox Hill Hosp., 114 AD2d 824, 824 [1st Dept 1985]).
As to whether Supreme Court overlooked or misapprehended the law, we initially agree that, where a conveyance of real property is void ab initio, a challenge thereto cannot be said to be subject to a statute of limitations defense (see Faison v Lewis, 25 NY3d 220, 226 [2015]). However, there is a critical distinction between that which is void and that which is voidable (see id. at 225). "A void real estate transaction is one where the law deems that no transfer actually occurred" (Weiss v Phillips, 157 AD3d 1, 10 [1st Dept 2017] [citation omitted]), such as where the transaction was based upon a forgery or false pretenses (see e.g. Faison v Lewis, 25 NY3d at 225; Cruz v Cruz, 37 AD3d 754, 754 [2d Dept 2007]; Yin Wu v Wu, 288 AD2d 104, 105 [1st Dept 2001]). This is because one cannot take what another had no interest in to convey (see Faison v Lewis, 25 NY3d at 225). "In contrast, a voidable real estate transaction is one where a transfer is deemed to have occurred, but can be revoked" (Weiss v Phillips, 157 AD3d at 10), such as where a signature or the authority to convey was acquired by "fraud, mistake or misplaced confidence" (Faison v Lewis, 25 NY3d at 224-225 [internal quotation marks and citation omitted]; see e.g. Beneficial Homeowner Serv. Corp. v KeyBank N.A., 177 AD3d 1253, 1255-1256 [4th Dept 2019]; Matter of Shau Chung Hu v Lowbet Realty Corp., 161 AD3d 986, 988 [2d Dept 2018]; Weiss [*5]v Phillips, 157 AD3d at 11-12). It is only in the former category of circumstances that it may be said that no limitations period applies, as a statute of limitations cannot function to make a transfer "that was void at its inception valid by the mere passage of time" (Riverside Syndicate, Inc. v Munroe, 10 NY3d 18, 24 [2008]; see Faison v Lewis, 25 NY3d at 228; Mazo v Mazo, 132 AD3d 1112, 1114 [3d Dept 2015]).
Here, it is not disputed that the Audubon Society was granted, as an absolute gift (see N-PCL 513 [a]; see also N-PCL 202 [a] [5]), fee simple absolute in parcel B. This, by definition, included the right of alienation (see De Peyster v Michael, 6 NY 467, 493 [1852]). This does not mean that the directions in the 1998 deed and the underlying agreement were without effect, as "[i]t has long been the law of this [s]tate that directions limiting the use of absolute gifts to charitable corporations must be followed" (Matter of Rieger, 60 AD2d 299, 302 [3d Dept 1977], lv denied 44 NY2d 643 [1978]). It is well established in both decisional and statutory law that a "charitable corporation . . . may not . . . receive a gift made for one purpose and use it for another, unless the court applying the cy pres doctrine so commands" (St. Joseph's Hosp. v Bennett, 281 NY 115, 123 [1939]; see N-PCL 513 [b]; Alco Gravure, Inc. v Knapp Found., 64 NY2d 458, 462 [1985]).
The Attorney General, concededly unable to identify any authority for the nullity argument, draws this Court's attention to the purportedly analogous situation where a charitable corporation is required to obtain either court approval or approval from the Attorney General prior to disposing of "all, or substantially all, [of its] assets" (N-PCL 510 [a]; see N-PCL 510 [a] [3]; see also N-PCL 511, 511-a; see generally 64th Assoc., L.L.C. v Manhattan Eye, Ear & Throat Hosp., 2 NY3d 585, 590 [2004]).[FN3] The Second Department has held that a violation of N-PCL 510 renders the offending conveyance void at the outset (see Solar Line, Universal Great Bhd., Inc. v Prado, 100 AD3d 862, 863-864 [2d Dept 2012]; Rose Ocko Found. v Lebovits, 259 AD2d 685, 687 [2d Dept 1999], appeal dismissed and lv denied 93 NY2d 997 [1999]). We find these cases, which offer limited analysis and do not involve a statute of limitations issue, unpersuasive in this matter.
As this Court has previously held, there remains "a difference in quality between an act which cannot be performed at all and an act which is authorized, but which requires judicial approval"; "[s]ometimes the latter may be deemed valid or become validated even if prior approval had not been obtained" (Mayer v Crandall, 285 App Div 723, 728 [3d Dept 1955]).[FN4] Had there been a timely challenge to the 2013 conveyance, the Audubon Society could have, in theory, contemporaneously obtained any cy pres relief found to be necessary (see generally EPTL 8-1.1 [c] [1]), essentially ratifying the allegedly unauthorized sale.[FN5] A void deed is forever incapable of conveying [*6]good title (see Faison v Lewis, 25 NY3d at 225); thus, if a transfer of real property can be deemed valid, it cannot also be said to be have been void ab initio.
Accordingly, we find that the 2013 conveyance of parcel B, held by the Audubon Society in fee simple absolute, was not void but instead merely voidable for any resultant diversion of the subject gift. The Attorney General's recission claim was thus required to be brought within the applicable limitations period. It was not. We therefore agree with Supreme Court that this challenge to the validity of the 2013 conveyance is time-barred (see generally CPLR 213 [1]). There is therefore no need to add Thomas Despart or his son to action No. 2 (see generally CPLR 1001 [a]; 1002 [b]) and no basis for the Attorney General to intervene in action No. 1 (see generally CPLR 1012 [a]; 1013; EPTL 8-1.1 [f]; 8-1.4 [m]; N-PCL 112 [a] [1], [3]). We also agree with Supreme Court that consolidation of these actions is unwarranted when considering the discrete issue presented in action No. 1 (see generally CPLR 602 [a]).
Finally, we must note that the Attorney General's nullity argument implicated several issues central to action No. 2, such as whether the subject gift was diverted and how the endowment may be used. Supreme Court accordingly addressed these issues, offering its interpretation of the meaning and intent of the gift instruments. We find these issues to have not been fully developed yet at this early procedural stage, and the parties therefore will not be bound by any such findings, notwithstanding our affirmance of the dispositions. The parties are entitled to full review of all remaining issues in this litigation, and we therefore also find that remittal to a new judge, who cannot be viewed as having already passed upon same, is appropriate under the circumstances.
Clark and Fisher, JJ., concur.
Aarons, J. (concurring in part and dissenting in part).
We agree with the majority to affirm both orders. We respectfully part ways from the majority's determination insofar as it assigns a different judge to preside over the underlying actions.
According to the majority, when deciding the motions at issue, Supreme Court offered its interpretation of the pertinent gift instruments and made certain findings and, therefore, cannot be impartial in resolving the merits of action No. 2. In our view, it is premature at this stage to conclude that the court has predetermined and/or already addressed central issues in that action such that it cannot be fair. When the time comes, the parties can offer their competing interpretations of the gift instruments. At that time, the parties may rely on the court's rationale and findings made in the April 2021 order. Alternatively, the parties might not do so. Regardless, any remaining issues to be resolved concerning the gift instruments will be better developed and briefed for the court to make an informed decision. Given that "every court retains continuing [*7]jurisdiction to reconsider its prior interlocutory orders during the pendency of the action" (Liss v Trans Auto Sys., 68 NY2d 15, 20 [1986]), it cannot be presumed how the court will decide any remaining issues.
Moreover, no party has requested that a new judge be assigned. There have been no claims of hostility, bias or lack of impartiality by Supreme Court. Nor does the record bear out any such behavior. Accordingly, the parties seemingly have no qualms with the current judge. In view of the foregoing, we see no basis to assign a new judge for the underlying actions.
Pritzker, J., concurs.
ORDERED that the orders are affirmed, without costs, and matters remitted to the Supreme Court for further proceedings before a different judge.

Footnotes

Footnote 1: Although Supreme Court purported to deny reargument, the court addressed the merits of the Attorney General's motion, and we therefore deem the court to have granted reargument but adhered to its prior decision (see Matter of Manufacturers & Traders Trust Co. v J.D. Mar. Serv., 187 AD3d 1249, 1251 [3d Dept 2020]).

Footnote 2: Rockwell concedes that, although she fully supports the Attorney General's efforts to set aside the transfer to Despart, such a claim was not actually before Supreme Court on the motion to dismiss. Rockwell makes clear that, instead, she seeks an order, pursuant to the cy pres doctrine, disgorging to the Estate, or another qualified organization designated thereby, the Audubon Society's right to enforce the forever wild restriction along with all unused portions of the endowment.

Footnote 3: Prior to the enactment of the N-PCL, the Legislature contemplated imposing this same limitation on all sales, mortgages or leases of real property by a charitable corporation (see Mem of Joint Legislative Committee to Study Revision of Corporation Laws, 2015 McKinney's Session Laws of NY at 27), but, ultimately, it did not (see N-PCL 509 [b]; 513 [a]).

Footnote 4: For example, Religious Corporations Law, which has a prohibition more stringent than N-PCL 510 (see Religious Corporations Law § 12 [1]), permits a court to retroactively approve a conveyance of real property after its sale and the execution and delivery thereof (see Religious Corporation Law § 12 [9]; Congregation Yetev Lev D'Satmar of Kiryas Joel, Inc. v Congregation Yetev Lev D'Satmar, Inc., 9 NY3d 297, 301 [2007]), and no court has held that violation of that prohibition will render a transfer void ab initio (see Solar Line, Universal Great Bhd., Inc. v Prado, 100 AD3d at 864; see also New Hope Missionary Baptist Church, Inc. v 466 Lafayette, Ltd., 136 AD3d 695, 697 [2d Dept 2016]; 112 E. 35th St., LLC v New York Socy. of the New Church, 114 AD3d 401, 402 [1st Dept 2014]).

Footnote 5: This is illustrated by a case that the Attorney General relies heavily upon, wherein the conveyance of a parcel subject to a public trust was declared "null and void" upon a finding that it had not, in fact, become impracticable to carry out the trust purpose (Cohen v City of Lynn, 33 Mass App Ct 271, 272-273, 278-279 [1992], lv denied 413 Mass 1107 [1992]; see generally Nusbaum v Nusbaum, 280 App Div 315, 317 [1st Dept 1952] [observing that "the word 'void' has often been used in judicial opinions in the sense of voidable"]).