Kaufman v P&G Brokerage Inc. (2024 NY Slip Op 24022)

[*1]

Kaufman v P&G Brokerage Inc.

2024 NY Slip Op 24022

Decided on January 28, 2024

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on January 28, 2024
Supreme Court, Kings County

Meyer Kaufman, Plaintiff,

against
P&G Brokerage Inc., Defendant.
P&G Brokerage Inc., Third-Party Plaintiff,
against
Iris House a Center for Women Living with HIV, Inc. d/b/a Iris House, Inc. and Rasheed Murdaugh, Third-Party Defendants.

Index No. 520357/2022

Furman Kornfeld & Brennan LLP, New York City (Salvatore Lapetina of counsel), for Defendant/Third-Party Plaintiff.
Lester Schwab Katz & Dwyer, LLP, New York City (Thomas A. Catalano of counsel), for Third-Party Defendants.

Aaron D. Maslow, J.

The following numbered papers were submitted and considered on this motion:
NYSCEF Doc No. 24: Notice of motion for summary judgment
NYSCEF Doc No. 25: Affirmation of Thomas A. Catalano, Esq. in support of motion
NYSCEF Doc No. 26: Exhibit A — Summons and complaint in main action
NYSCEF Doc No. 27: Exhibit B — Defendant/Third-Party Plaintiff P&G's answer in main action
NYSCEF Doc No. 28: Exhibit C — Third-party summons and complaint
NYSCEF Doc No. 29: Exhibit D — Third-Party Defendants' answer in third-party action
NYSCEF Doc No. 30: Exhibit E — Scatter Site Agreement between Third-Party Defendants Iris House and Rasheed Murdaugh
NYSCEF Doc No. 31: Exhibit F — Lease agreement between Plaintiff and Third-Party Defendant Iris House
NYSCEF Doc No. 35: Affirmation of Salvatore Lapetina, Esq. in opposition to motion
NYSCEF Doc No. 36: Reply affirmation of Thomas A. Catalano, Esq. in support of motion
NYSCEF Doc No. 37: Reply affidavit of Harry Gibbs in support of motion
NYSCEF Doc No. 38: Exhibit A — Scatter Site Agreement between Third-Party Defendants Iris House and Rasheed Murdaugh
NYSCEF Doc No. 39: Exhibit B — Scatter Site Agreement between Third-Party Defendants Iris House and Rasheed Murdaugh [FN1]
NYSCEF Doc No. 41: Transcript of November 17, 2023 oral argument
Question Presented
In an action by a building owner for damages due to negligence and breach of contract on the part of an insurance broker, alleging that the insurer's broker's misactions during the process of policy renewals resulted in the insurance carrier's disclaiming liability after a fire, does the insurance broker possess a third-party cause of action against those allegedly responsible for the fire? The parties agreed at oral argument that this issue appears not to have been addressed by prior case law, especially at the appellate level.
Background
This is an action to recover damages by Plaintiff wherein Plaintiff alleges that Defendant/Third-Party Plaintiff P&G Brokerage Inc. ("P&G"), while acting as Plaintiff's insurance broker, negligently and in breach of contract caused Plaintiff's insurance claim to be denied. 
At the time of commencement of this action, Plaintiff Meyer Kaufman ("Plaintiff" or "Kaufman") was the owner of real property located at 126 East 93 Street, in Brooklyn, New York (see NYSCEF Doc No. 26, main complaint ¶ 2). Defendant/Third-Party Plaintiff P&G was an insurance brokerage firm located in Brooklyn, New York (see id. ¶ 3).
It is alleged that on or about May 10, 2016, Plaintiff contacted P&G to act as Plaintiff's insurance broker. P&G agreed to do so and further agreed to procure insurance on Plaintiff's behalf. P&G is alleged to have procured the insurance policy on the same day from nonparty Union Mutual Fire Insurance Company ("Union"). This insurance policy was intended to, in part, insure the property against damage caused by fire. (See id. ¶¶ 4-5.)
P&G designated an internal email address as the address for document deliveries. Union issued Plaintiff's insurance policy on or about May 26, 2016, with automatic annual renewals. Said renewals were to be accompanied by an annual renewal application to be delivered to the [*2]email designated by P&G. (See id. ¶¶ 6-8.)
Third-Party Defendant Iris House: A Center for Women Living With HIV, Inc. d/b/a Iris House, Inc. ("Iris House"), is a not-for-profit corporation intended to assist those living with HIV/AIDS and other health issues. Among the programs offered by Iris House is one in which it would assist in providing housing for unhoused populations and/or those requiring assistance with finding and maintaining stable housing. Third-Party Defendant Rasheed Murdaugh ("Murdaugh") was a recipient of such housing services. On or about August, 7, 2018, Murdaugh and Iris House entered into a scatter site agreement ("Scatter Site Agreement") agreement wherein Iris House would provide Murdaugh with housing for 30% of Murdaugh's income. Plaintiff and Iris House entered into a lease agreement on or about May 23, 2019 to lease apartment 2F at the subject location. Subsequently, Murdaugh was placed in apartment 2F pursuant to Iris House's housing program and the executed Scatter Site Agreement. (See NYSCEF Doc No. 25, Catalano Aff ¶¶ 5-8.)
Plaintiff contends that in 2019 and 2020, Union added one or more questions in the renewal application. Specifically, Union added the following question: "Are any of the habitational units rented to anyone other than individuals on a long-term lease for their exclusive use and that of their immediate families?" It is alleged that P&G did not forward the renewal applications to Plaintiff and, instead, completed the application each year without further input from Plaintiff. It is further alleged that in 2019 and 2020, in response to the above-mentioned question, P&G responded in the negative, which was incorrect. Despite P&G's representations, Iris House was still leasing the apartment and Murdaugh continued to live in it. (See NYSCEF Doc No. 26, main complaint ¶¶ 9-10).
On or about March 5, 2021, there was a fire in apartment 2F.[FN2]
At some time thereafter, Plaintiff filed a claim with Union for the damage sustained to the building by the fire. On November 11, 2021, Union denied Plaintiff's claim, noting that Union had discovered that the subject apartment was being inhabited via a long-term lease by a party other than an individual on a long-term lease and the individual's family. Union determined this to be a material misrepresentation and disclaimed coverage.[FN3]
The answers of P&G to Union's questions in the 2109 and 2020 renewal process formed the alleged misrepresentation. (See id. ¶¶ 11-12.)
On July 18, 2022, Plaintiff commenced the instant action by filing and serving a summons and complaint (NYSCEF Doc No. 26) against Defendant P&G; two causes of action — sounding in negligence and breach of contract — were alleged.
P&G filed Defendant's answer (NYSCEF Doc No. 27) on or about November 18, 2022. P&G's original answer denied the relevant allegations in Plaintiff's causes of action and asserted 25 affirmative defenses.
On or about February 7, 2023, Defendant filed a third-party summons and complaint [*3](NYSCEF Doc No. 28) impleading Third-Party Defendants Iris House and Rasheed Murdaugh. P&Gs third-party causes of action sound in (1) common law indemnification; (2) contribution; and (3) breach of contract. Iris House and Murdaugh interposed their third-party answer (NYSCEF Doc No. 29), which denied the relevant allegations in P&G's third-party summons and complaint and further asserted eight affirmative defenses.
On May 15, 2023, Iris House and Rasheed Murdaugh filed the motion currently before this Court which seeks summary judgment dismissing P&G's third-party complaint on several grounds (see NYSCEF Doc No. 24).
Movants Iris House and Murdaugh's Arguments [FN4]

Iris House [FN5]
first argues that a requirement for contractual or common law indemnification is that the party seeking to be indemnified must be free from negligence. Relying on Dow v Hermes Realty, LLC (155 AD3d 824 [2d Dept 2017] [Supreme Court did not err in denying defendant's motion for summary judgment on its cross-claims for contractual and common law indemnification as defendants did not establish that defendants were free from negligence]), Iris House argues that Plaintiff is not alleging that P&G be held vicariously liable for the negligence of Iris House. Rather, Plaintiff is alleging that P&G acted negligently in failing to properly maintain the insurance coverage for the apartment. Therefore, Iris House argues that dismissal is warranted as a finding of negligence against P&G for P&G's failure to timely renew plaintiff's insurance, bars indemnification.
Iris House next argues that P&G is not entitled to contribution as the parties did not suffer the "same injury." Iris House argues that P&G can only be found liable for P&G's failure to properly maintain the insurance for the property while P&G seeks contribution on the grounds that Iris House was negligent in causing the fire. Iris House contends that any involvement by Iris House was unrelated to P&G's ability or failure to properly procure Plaintiff's insurance. Iris House asserts that "the Third-Party Defendants could not have caused, augmented, or contributed to this injury" (NYSCEF Doc No. 25 ¶ 30). Iris House cites to Edouard v Ginsberg & Broome, P.C., 229 AD2d 559 [2d Dept 1996][FN6]
for the proposition that contribution requires proof that the injury suffered by the parties was the same.
Iris House also argues that contribution is inapplicable in cases of economic losses resulting from breach of contract, citing Children's Corner Learning Ctr. v A. Miranda Contr. Corp., 64 AD3d 318 [1st Dept 2009][FN7]
and Cobblestone Foods, LLC v Branded Concept Dev., [*4]Inc., 200 AD3d 847 [2d Dept 2021].[FN8]

Finally, Iris House argues that P&G's third-party claim for breach of contract should also be dismissed for failing to set forth sufficient facts to support such cause of action. Specifically, Iris House alleges that P&G failed to establish that P&G was a beneficiary of the lease entered into between Iris House and Plaintiff for apartment 2F. Iris House argues that to sue for breach of contract, a non-party to said contract must establish that said party was the intended beneficiary pursuant to State of California Pub. Employees' Retirement Sys. v Shearman & Sterling, 95 NY2d 427 [2000].[FN9]
Iris House asserts that the third-party complaint does not indicate that P&G was an intended third-party beneficiary of the lease. Additionally, Iris House argues that P&G has failed to establish that any benefit to P&G from the lease was immediate rather than incidental.
Non-Movant P&G's Opposition [FN10]

In opposition, P&G first argues that Iris House owed a duty to Plaintiff to pay for any repairs arising from fires caused by Iris House and/or Murdaugh and to allow Plaintiff to enter onto the property and make repairs. P&G points to the lease agreement between Iris House and Plaintiff as well as the Scatter Site Agreement between Iris House and Murdaugh. The lease agreement stated, in relevant part:
Renter is required to advise Owner immediately in the event of fire or other casualty which renders the apartment partially or wholly unfit for occupancy. Owner shall repair the premises as soon as possible subject to any delays due to adjustment of insurance claims or any cause not under Owner's control. If part of the premises are usable, Renter must pay rent for the usable part. If the premises are damaged and Owner determines that the apartment is beyond repair, the term of this lease shall end and Renter must vacate the apartment. If the fire or casualty was caused by Renter's actions, the costs of the repair shall be repaid to Owner by Renter as added rent.
(NYSCEF Doc No. 31 ¶ 16).
Meanwhile, the Scatter Site Agreement stated, in relevant part, "Tenant shall permit Iris House to enter the Unit from time to time, in order to inspect the Apartment, make necessary [*5]repairs or services, deliver legal notices, and verify occupancy" (NYSCEF Doc No. 30 at 1). P&G contends that these contractual terms establish Iris House's obligations to Plaintiff in the case of a fire or emergency and that, since this matter arose from a fire, P&G is entitled to contribution from Iris House pursuant to these terms.
P&G also argues that the cases cited by Iris House regarding contribution are inapplicable here. P&G notes that the plaintiffs in those cases cited by Iris House lost the ability to sue the direct tortfeasor and subsequently brought legal malpractice suits against their respective law firms. It is P&G's position that this matter is dissimilar from said cases as "Plaintiff did not lose any legal rights because of P&G, and Plaintiff's rights to assert claims against IRIS/MURDAUGH are alive and well and do not expire until March 5, 2024" (NYSCEF Doc No. 35 ¶ 18).[FN11]
P&G goes on to note that, had the apartment been properly insured, Union would have been able to seek contribution from Iris House and argues that forcing P&G to shoulder the costs alone would be unfair.
As to Iris House's arguments on the inapplicability of contribution for economic losses, P&G contends that the loss here is not purely economic in nature. P&G notes that Plaintiff's complaint against P&G includes causes of action for negligence and "breach of standard of care," and that such causes of action are in the nature of torts. P&G argues that tortious conduct that results in damage is considered an injury to property which would allow for contribution.
As to contractual and common law indemnification, P&G once again argues that the case law cited by Iris House [FN12]
is disanalogous. P&G argues that the difference between Iris House's cited case law and the matter here is that P&G did not cause or contribute to the fire. P&G contends that since Plaintiff is seeking to be made whole after a fire caused damage to Plaintiff's property, and P&G did not negligently contribute to the fire, P&G can seek indemnification. P&G further posits that preventing P&G from seeking indemnification would be unjust and inequitable.
Finally, P&G argues that Iris House's motion is premature. P&G points to the absence of depositions of Iris House and argues that Iris House may have additional information and discovery which were not disclosed yet. P&G further posits that Iris House may have additional information regarding the provisions of its lease agreement with Plaintiff and whether Iris House and Plaintiff intended the above-referenced provisions to also benefit third parties, such as P&G.
Movants Iris House and Murdaugh's Reply [FN13]

In P&G's reply, Iris House first argues that the injuries sustained by Plaintiff from the fire in Plaintiff's property is not the same injury Plaintiff sustained when P&G failed to properly renew Plaintiff's property insurance. Iris House also reiterates that the case law provided by Iris House and disputed as disanalogous by P&G is sufficiently similar. Iris House argues that P&G's failure to inform Union of the occupancy leading to Union disclaiming on Plaintiff's insurance policy is akin to an attorney failing to preserve a client's legal rights. Iris House notes that while the damages suffered may be identical, the injuries suffered by Plaintiff for the damage caused by the fire and the disclaiming of Plaintiff's insurance policy are not the same. Consequently, P&G is not entitled to contribution.
Iris House briefly notes that P&G's arguments regarding equity have no basis in law and are insufficient to overcome the requirements of CPLR 1401 (claim for contribution) and case law. Iris House further argues that P&G incorrectly attempts to conflate Iris House's duty to Plaintiff with the injury sustained by Plaintiff due to misactions of P&G. Iris House looks to discredit P&G's cited case law by noting that Guerra v St. Catherine of Sienna (79 AD3d 808 [2d Dept 2010]), cited in P&G's opposition, held that that an injured plaintiff's employer could not seek common law indemnification and contribution — only contractual indemnification — and did not discuss whether the parties suffered the same injury.
Iris House repeats the argument that P&G is seeking purely economic damages, which are not subject to contribution where breach of contract is claimed. "[Plaintiff] Kaufman seeks to recover from P & G the amount he should have received from the Union policy, but not for P & G's negligence and/or breach of contract. The mere fact that the underlying loss involved 'injury to property' does not mean that the main action also seeks to recover for 'injury to property' " (NYSCEF Doc No. 36 ¶ 18).
Iris House's penultimate argument focuses on P&G's failure to address P&G's own negligence in the matter. Iris House notes that P&G attempted to distinguish P&G from parties in Iris House's case law by arguing that P&G can establish P&G's lack of negligence. Iris House notes that P&G will not be entitled to contribution, regardless of whether P&G is found to be negligent. If the Court finds that P&G acted negligently in failing to update Plaintiff's insurance renewal forms, then indemnification is necessarily barred. Similarly, if P&G is found to have not acted negligently, then the third-party suit is entirely academic as there will be nothing to indemnify.
Finally, Iris House argues that summary judgment is not premature. Iris House posits that P&G has failed to identify any relevant additional discovery which would render the present motion premature. Iris House argues that depositions of the parties for the purpose of determining whether Iris House and Plaintiff intended the lease agreement to benefit third parties would contravene the plain language of the lease, in violation of the parol evidence rule and established case law. Iris House maintains that the plain language of the lease agreement (and the absence of any indication that the parties intended to benefit a third-party) contains no ambiguities that would justify further contract interpretation.
Discussion
Iris House seeks summary judgment against P&G, effectively dismissing P&G's third-party summons and complaint. P&G's third-party complaint contains three causes of action, sounding in: (1) common law indemnification; (2) contribution; and (3) breach of contract/contractual indemnification.
The issue at hand is, in essence, three-fold. First, the Court must determine whether [*6]P&G is entitled to indemnity from Iris House for any negligence in causing or contributing to the apartment fire. Second, the Court must determine whether a party seeking indemnification must be free from negligence. Finally, the Court must determine whether the injury suffered by Plaintiff from the alleged negligence of Iris House in possibly causing or contributing to the fire which damaged Plaintiff's property is the same injury Plaintiff sustained when P&G failed to properly update/renew Plaintiff's insurance renewal paperwork causing the subsequent insurance claim for damage to Plaintiff's property to be denied.
(A) Summary Judgment, Generally
"As we have stated frequently, the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; see also Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Andre v Pomeroy, 35 NY2d 361, 364 [1974]). The party moving for summary judgment must present a prima facie case of entitlement to judgment as a matter of law, tendering sufficient evidence in admissible form demonstrating the absence of material issues of fact, and the failure to make such a showing requires denial of the motion, regardless of the sufficiency of the opposing papers (see CPLR 3212 [b]; Smalls v AJI Industries, Inc., 10 NY3d 733 [2008]; Alvarez, 68 NY2d at 324). Once a prima facie showing has been made, however, the burden shifts to the nonmoving party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact that require a trial for resolution or tender an acceptable excuse for the failure to do so (see Zuckerman v City of New York, 49 NY2d 557 [1980]). If there is any doubt as to the existence of a triable fact, the motion for summary judgment must be denied (see Rotuba Extruders, Inc. v Ceppos, 46 NY2d 223, 231 [1978]).
(B) Contractual Indemnification
Before delving into an analysis of the claims of the parties, the Court finds it necessary to clarify P&G's third-party cause of action sounding in "breach of contract." While P&G titles the cause of action as "breach of contract," this Court finds it equally appropriate to call the cause of action, "contractual indemnification." Black's Law Dictionary defines indemnity as:
1. A duty to make good any loss, damage, or liability incurred by another. 2. The right of an injured party to claim reimbursement for its loss, damage, or liability from a person who has such a duty. 3. Reimbursement or compensation for loss, damage, or liability in tort; esp., the right of a party who is secondarily liable to recover from the party who is primarily liable for reimbursement of expenditures paid to a third-party for injuries resulting from a violation of a common law duty.
(Black's Law Dictionary [11th ed 2019], indemnity).
Further, it defines implied contractual indemnity as, "[i]ndemnity that is not expressly provided for by an indemnity clause in an agreement but is nevertheless determined to be reasonably intended by the parties, based on equitable considerations" (id.). Here, P&G asserts that P&G is entitled to recover for the damage to Plaintiff's apartment pursuant to the lease agreement entered into between Iris House and Plaintiff. As noted above, Iris House and Plaintiff entered into a lease agreement on or about May 23, 2019, to allow Iris House to place parties within the apartment. Said lease contains the following clause:
Renter is required to advise Owner immediately in the event of fire or other casualty which renders the apartment partially or wholly unfit for occupancy. Owner shall repair the premises as soon as possible subject to any delays due to adjustment of insurance [*7]claims or any cause not under Owner's control. If part of the premises are usable, Renter must pay rent for the usable part. If the premises are damaged and Owner determines that the apartment is beyond repair, the term of this lease shall end and Renter must vacate the apartment. If the fire or casualty was caused by Renter's actions, the costs of the repair shall be repaid to Owner by Renter as added rent.
(NYSCEF Doc No. 31 [emphasis added]).
It is P&G's contention that this clause necessitates reimbursement (or indemnification) to P&G for the cost of the damage to Plaintiff's apartment. P&G even states that "THIRD-PARTY DEFENDANTS [Iris House and Murdaugh] must indemnify and hold harmless Plaintiff under the terms of the lease and/or contract" (NYSCEF Doc No. 28). Accordingly, P&G is seeking reimbursement from Iris House for damages incurred to the property leading to the present matter. Thus, while P&G titles this cause of action, "Breach of contract," this Court finds it equally appropriate to term it contractual indemnification or implied contractual indemnification.
Accordingly, via the transitive property, Iris House seeks to dismiss P&G's claims of contractual and common law indemnification. However, P&G was not in privity of contract with Iris House as P&G was not a party to the lease agreement. Rather, the lease agreement was executed by and between Plaintiff and Iris House. Nevertheless, the courts have repeatedly held that a party may seek indemnity as a third-party beneficiary to an agreement (see e.g. Matter of White Plains Plaza Realty, LLC v Cappelli Enterprises, Inc., 108 AD3d 634 [2d Dept 2013]). In fact, P&G's third-party summons and complaint specifically alleges that P&G was an intended third-party beneficiary of the lease agreement and seeks to recover accordingly (NYSCEF Doc No. 28 ¶ 38). Thus, P&G is seeking indemnification, not as a party to the lease agreement, but as a third-party beneficiary.
Third-party beneficiary claims must be highly scrutinized. Generally, to recover under the theory of being a third-party beneficiary, the party must preliminarily establish, "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost" (Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 336 [1983]). No party here contests the existence of the lease agreement as a valid and binding contract by and between Plaintiff and Iris House. Iris House admits to the validity of the contract in the affidavit of Harry Gibs, an employee of Iris House (see NYSCEF Doc No. 37). Thus the first element is clearly met.
The issue herein arises from the second and third elements prescribed by the Court of Appeals. "Indemnity contracts are to be strictly construed to avoid reading into them duties which the parties did not intend to be assumed" (Quality King Distributors, Inc. v E & M ESR, Inc., 36 AD3d 780, 782 [2d Dept 2007]). "Courts will construe a contract to provide indemnity to a party for its own negligence only where the contractual language evinces an 'unmistakable intent' to indemnify" (Great N. Ins. Co. v Interior Const. Corp., 7 NY3d 412, 417 [2006]). "Although the words might 'seem to admit of a larger sense, yet they should be restrained to the particular occasion and to the particular object which the parties had in view.' . . . This is particularly true with indemnity contracts. (Hooper Assoc., Ltd. v AGS Computers, Inc., 74 NY2d 487, 491 [1989] [quoting Robertson v Ongley Elec. Co., 146 NY 20, 23 [1895])). " 'In determining third-party beneficiary status it is permissible for the court to look at the surrounding circumstances as well as the agreement. . . . Moreover, it is well settled that the [*8]obligation to perform to the third-party beneficiary need not be expressly stated in the contract' " (Encore Lake Grove Homeowners Assn., Inc. v Cashin Assoc., P.C., 111 AD3d 881, 882 [2d Dept 2013] [quoting Aievoli v Farley, 223 AD2d 613, 614 [2d Dept 1996])). For the sake of conciseness, the Court will not repeat the plain language of the contract as it has been referenced above. The lease agreement makes no reference to P&G, nor any parties other than Plaintiff and Iris House. Furthermore, P&G has failed to proffer any external evidence that either contracting party intended to indemnify P&G, despite being able to seek discovery from Plaintiff regarding the intent of the contracting parties. The language of the contract is clearly absent of any intent of the parties to indemnify any third party. Considering the elevated level of scrutiny, and the courts' general policy of construing contracts narrowly based on the plain language, P&G cannot be said to be an intended third-party beneficiary. Meanwhile, Iris House argues that P&G's third-party complaint does not provide any factual allegations to support finding that the intent of Iris House or Plaintiff was to indemnify P&G. Indeed, P&G's third-party complaint only flatly notes that P&G was an intended beneficiary but provides no facts establishing intent or even that Iris House knew of P&G's existence so as to assent to their indemnification. Thus, Iris House's argument is meritorious.
In opposition to this argument, P&G primarily argues that P&G has not received sufficient discovery to allow for summary judgment. "It is well established that where facts essential to justify opposition to a motion for summary judgment are exclusively within the knowledge and control of the movant, summary judgment may be denied" (Baron v Inc. Vil. of Freeport, 143 AD2d 792, 792-93 [2d Dept 1988]). P&G specifically notes that P&G requires complete copies of the lease agreement and the Scatter Site Agreement and further seeks to depose Plaintiff and Iris House to determine the parties' intent.
Iris House's filed affidavit of Harry Gibbs clearly notes that the Scatter Site Agreement as it appears in the present filings is the extent of the agreement and that said agreement has already been turned over to P&G. The lease agreement between Plaintiff and Iris House is also within P&G's possession. Finally, as to the deposition of Iris House, the Court is hard pressed to imagine that any evidence regarding Iris House's intent to indemnify P&G would be evinced. The parties' intentions are not admissible unless there is ambiguity within the four corners of the agreement (see Hoeg Corp. v Peebles Corp., 153 AD3d 607, 608 [2d Dept 2017]); Geothermal Energy Corp. v Caithness Corp., 34 AD3d 420, 423 [2d Dept 2006]). There is no ambiguity in the lease agreement.
In summary, Iris House has established that P&G is not entitled to indemnification as a third-party beneficiary. P&G is not mentioned either by name or by reference in the subject clause of the submitted lease agreement, and this Court must interpret contracts narrowly and based on the plain language of the same. Meanwhile, P&G's argument regarding prematurity fails to establish the likelihood that discovery will yield further information. Thus, Iris House is entitled to summary judgment on the contractual indemnity cause of action.
(C) Common Law Indemnification
The Court now proceeds to discuss P&G's third-party cause of action sounding in common law indemnity. "The underpinning [of] indemnity actions is the prevention of unjust enrichment" (State v Stewart's Ice Cream Co., Inc., 64 NY2d 83, 88 [1984]). "A party's right to indemnification may arise from a contract or may be implied 'based upon the law's notion of what is fair and proper as between the parties' " (McCarthy v Turner Const., Inc., 17 NY3d 369, 374-75 [2011] [quoting Mas v Two Bridges Assoc., 75 NY2d 680 [1990]). Here, P&G's third-[*9]party complaint asserts that "if Plaintiff is found to have suffered damages as a result of the allegations in the Complaint, it is a result of the negligence and/or breach of contract of THIRD-PARTY DEFENDANTS [Iris House] and/or THIRD-PARTY DEFENDANTS' sublessee [Murdaugh] in connection with its lease and/or sublease as relates to the Premises" (NYSCEF Doc No. 28 ¶ 29). In other words, P&G is seeking common law indemnification under the theory that any injury sustained by Plaintiff for which P&G may be found liable was caused by the malfeasance or nonfeasance of Iris House and/or Murdaugh. This line of reasoning appears to be viable at first inspection as it may be unjust to attribute a loss to P&G (as the insurance broker) caused by them.
Predominantly, however, the Court is concerned with the theoretical mootness of the cause of action. In essence, the claim for common law indemnity, in the present context, is doomed for failure regardless of the outcome. "Implied indemnity is frequently employed in favor of one who is vicariously liable for the tort of another, but the principle is not so limited and has been invoked in other contexts as well. Nonetheless, 'an indemnity cause of action can be sustained only if the third-party plaintiff and the third-party defendant have breached a duty to plaintiff and also if some duty to indemnify exists between them,' " (Rosado v Proctor & Schwartz, Inc., 66 NY2d 21, 24 [1985] [internal citation omitted and emphasis added]). "The duty that forms the basis for the liability arises from the principle that 'every one is responsible for the consequences of his own negligence, and if another person has been compelled . . . to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him' " (Konsky v Escada Hair Salon, Inc., 113 AD3d 656, 657-58 [2d Dept 2014] [quoting Oceanic Steam Nav. Co. v Cia. Transatlantica Espanola, 134 NY 461, 468 [1892] [emphasis added]).
In the present matter, Plaintiff is seeking to recover against P&G for P&G's alleged negligence and breach of contract. This creates a thought experiment akin to the trolley problem. Theoretically, there are only four possible outcomes for the first-party matter: (1) P&G is found not liable for either negligence or breach of contract; (2) P&G is found to be liable for the breach of contract, but not for negligence; (3) P&G is found to be liable for negligence, but not for breach of contract; and (4) P&G is found to be liable for both breach of contract and negligence. If option 1 comes to fruition, P&G will not be compelled to pay damages, rendering indemnity moot. Meanwhile, if option 2 occurs, it is nonsensical to attribute P&G's breaching their contract to Plaintiff to any actions or inactions taken by Iris House. Even assuming Iris House caused or contributed to the property damage, purposefully or negligently, no logical person can conclude that the fire caused P&G to breach the contract with Plaintiff. Rather, the apartment fire did nothing but expose P&G's failure. Accordingly, it cannot be said that Iris House ought to pay as the wrongdoer. Options 1 and 2 lead to the inevitable death of P&G's common law indemnity cause of action.
On the other hand, and much like the trolley problem, options 3 and 4 also lead to dismissal of P&G's common law indemnity cause of action. "[W]here one is held liable solely on account of the negligence of another, indemnification, not contribution, principles apply to shift the entire liability to the one who was negligent" (D'Ambrosio v City of New York, 55 NY2d 454, 462 [1982] [emphasis added]). "Conversely, where a party is held liable at least partially because of its own negligence, contribution against other culpable tort-feasors is the only available remedy" (Glaser v M. Fortunoff of Westbury Corp., 71 NY2d 643, 646 [1988] [emphasis added]). As mentioned above, options 3 and 4 occur when it is determined that P&G acted negligently in failing to properly renew the insurance. If P&G is found liable for [*10]negligence, then P&G is not allowed to recover through a theory of common law indemnity and must seek, instead, contribution.
Thus, to summarize, any outcome from any trial in this matter will, inevitably, lead to the nullification of any claims of common law indemnity. In this instance, P&G's common law indemnity claim is self-defeating on all fronts. No known outcome would allow P&G to recover from Iris House through a theory of common law indemnity. Accordingly, the Court is inclined to side with Iris House in this matter and find that summary judgment is justified as to P&G's claim of common law indemnity.
(D) Contribution
We move finally to P&G's third-party cause of action for contribution. This matter is unique in that the Court, and indeed the attorneys in this matter, have been unable to locate a binding decision to determine whether an insurance broker who fails to properly renew insurance is allowed to seek contribution from a party which they allege caused the underlying loss. CPLR 1401 states, in relevant part, "[T]wo or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought" [emphasis added]. "The conclusion reached is that where a third-party is found to have been responsible for a part, but not all, of the negligence for which a defendant is cast in damages, the responsibility for that part is recoverable by the prime defendant against the third party. To reach that end there must necessarily be an apportionment of responsibility in negligence between those parties." (Dole v Dow Chem. Co., 30 NY2d 143, 148-49 [1972].) "Contribution arises automatically when certain factors are present and does not require any kind of agreement between or among the wrongdoers" (Rosado v Proctor & Schwartz, Inc., 66 NY2d at 24). "The legislative history makes clear, and indeed we have recognized, that the statute applies not only to joint tort-feasors, but also to concurrent, successive, independent, alternative, and even intentional tort-feasors" (Bd. of Educ. of Hudson City School Dist. v Sargent, Webster, Crenshaw & Folley, 71 NY2d 21, 27 [1987]). "The theory of liability was held to be irrelevant to Defendant Third-Party Plaintiff's right to seek contribution from the third-party defendant pursuant to CPLR article 14. It is the fact of liability to the same person for the same harm, rather than the legal theory upon which liability is based, which controls" (Cresswell v Warden, 164 AD2d 855, 856 [2d Dept 1990] [emphasis added]).
"A contribution claim can be made even when the contributor has no duty to the injured plaintiff. In such situations, a claim of contribution may be asserted if there has been a breach of a duty that runs from the contributor to Defendant who has been held liable" (Raquet v Braun, 90 NY2d 177, 182 [1997] [internal citations omitted]). Therefore, to establish a claim for contribution, P&G must establish: (1[a]) that both P&G and Iris House both owed a duty to Plaintiff or (1[b]) that Iris House owed a duty to P&G; and (2) that there was a breach of the duty owed by both P&G and Iris House that caused or contributed to the same injury suffered by Plaintiff. Here, P&G is seeking contribution from Iris House for the damage caused to Plaintiff's property. It is P&G's contention that Iris House either negligently or purposefully caused or contributed to the fire which damaged Plaintiff's property. It is P&G's position that Iris House owed a duty to maintain the property as a tenant and further owed a duty to pay to repair any damage incurred for fires caused by Iris House. Indeed, the Court agrees that the lease agreement entered into between Iris House and Plaintiff clearly established a duty by Iris House to contribute to or repay Plaintiff for any damage incurred through a fire which was caused by [*11]Iris House. Accordingly, the one element for contribution exists.
The primary issue here is whether the injury suffered by Plaintiff in the fire is the same injury as that which Plaintiff suffered when Union denied Plaintiff's claim due to P&G's failure to properly renew Plaintiff's insurance. "The critical requirement for apportionment under Dole or CPLR article 14 is that the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought. . . . The parties must have contributed to the same injury" (Nassau Roofing & Sheet Metal Co., Inc. v Facilities Dev. Corp., 71 NY2d 599, 603 [1988] [emphasis added and internal citations omitted]).
Courts have repeatedly held that contribution is inapplicable when the injuries suffered by Plaintiff are not the same (e.g. id.; Gonzalez v Jacoby & Meyers, 258 AD2d 560 [2d Dept 1999]). Unsurprisingly, it is Iris House's position that the injury suffered by Plaintiff from the fire is unique from the injury suffered by Plaintiff when Plaintiff's insurance policy was disclaimed due to P&G's error. In support of this contention, Iris House cites to various cases in which courts found that the loss of a legal right is a distinct injury from damages to people or property (e.g. Gonzalez v Jacoby & Meyers, 258 AD2d 560; Edouard v Ginsberg & Broome, P.C., 229 AD2d 559; Jakobleff v Cerrato, Sweeney and Cohn, 97 AD2d 786 [2d Dept 1983]). P&G argues that Iris House's cited cases are inapplicable as no legal rights were lost by Plaintiff and that the injury sustained was instead property damage caused by the fire. P&G notes that Plaintiff maintains the right to sue Iris House directly for causing and contributing to the fire and that, subsequently, the injury sustained is not one of legal rights lost. P&G notes that P&G is expected to pay for the cost to repair the burned apartment, and thus the injury sustained is that of the fire damage. This Court is unconvinced by P&G's argument.
P&G's position that Plaintiff did not lose a legal right when Plaintiff's insurance claim was denied requires the assumption that legal rights can only be imposed by statute or common law. However, the Restatement (Second) of Contracts defines a contract as "the resulting legal obligation, or to the entire resulting complex of legal relations" (Restatement [Second] of Contracts § 1 (1981) [emphasis added]). The same section goes on to define the remedies, in relevant part, as to include "the existence of legal duty in some other way such as recognizing or denying a right, privilege or power created or terminated by the promise," which the courts may recognize (id. [emphasis added]). In a similar vein, the Uniform Commercial Code defines a contract as "the total legal obligation that results from the parties' agreement as determined by [the Uniform Commercial Code] as supplemented by any other applicable laws" (Uniform Commercial Code § 1-201 [emphasis added]). Furthermore, Black's Law Dictionary defines contract, in relevant part, as "An agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law" (Black's Law Dictionary [11th ed 2019], contracts [emphasis added]). The collective implication of these definitions is that each contract establishes pseudo-law which applies to the parties in the contract. Every contract creates some form of legal obligation for each party to the contract and a legal right to enforce said obligations. In other words, by and between the member parties to a contract, a contract creates a new set of laws (legal obligations) which is secondary only to the black letter of the law.
The courts have further held that contracts should be enforced whenever the contract is not contradicted by law or public policy. "Freedom of contract prevails in an arm's length transaction between sophisticated parties such as these, and in the absence of countervailing public policy concerns there is no reason to relieve them of the consequences of their bargain" (Oppenheimer & Co., Inc. v Oppenheim, Appel, Dixon & Co., 86 NY2d 685, 695 [1995] [*12][emphasis added]). "Ordinarily, courts are not involved in the oversight or approval of contracts and will enforce them unless illegal, against public policy or deficient in some other respect" (64th Assoc., L.L.C. v Manhattan Eye, Ear & Throat Hosp., 2 NY3d 585, 589-90 [2004] [emphasis added]). "In general, public policy holds competent contracting parties to bargains made by them, freely and voluntarily, and requires the courts to enforce such agreements. The interests of society and public policy require the utmost freedom of contract, within the law" (Martin v Martin, 5 AD2d 307, 309 [2d Dept 1958] [emphasis added]). Accordingly, while contracts may not have the same breadth and reach as statute or common law, contracts still establish legal rights and obligations which must be honored in most circumstances. Consequently, failing to abide by the terms of a contract or negligently causing a party to lose the benefit of a contract extinguishes the legal rights of a party, for which they can recover. Accordingly, the Court is convinced by Iris House's argument to interpret the present matter in the same manner the courts have interpreted legal malpractice defendants seeking contribution in the past; no right of contribution from the underlying alleged wrongdoer was permitted (see Edouard v Ginsberg & Broome, P.C., 229 AD2d 559; Gonzalez v Jacoby & Meyers, 258 AD2d 560; Jakobleff v Cerrato, Sweeney and Cohn, 97 AD2d 786).
P&G's alleged failure to properly renew Plaintiff's insurance policy allegedly breached P&G's duty to Plaintiff and caused Plaintiff to forfeit its right to indemnity by Union. "As a general matter, an insurance company will have a duty to indemnify an insured party when the underlying occurrence falls within the scope of coverage afforded by the particular insurance policy at issue" (One Reason Rd., LLC v Seneca Ins. Co., Inc., 163 AD3d 974, 976 [2d Dept 2018]). Furthermore, "An insurer must defend whenever the four corners of the complaint suggest — or the insurer has actual knowledge of facts establishing — a reasonable possibility of coverage" (Cont. Cas. Co. v Rapid-Am. Corp., 80 NY2d 640, 648 [1993]). Accordingly, here, had Union not disclaimed the policy, Plaintiff would have had the right to seek both indemnity and legal representation in the case of a lawsuit. By failing to properly renew the insurance policy, P&G caused Plaintiff to lose both legal rights. Accordingly, the injury suffered is one of a loss of legal rights and not the loss of property. Thus, the injury suffered by Plaintiff for which P&G is seeking contribution is distinct from the injury caused by the apartment fire.
Indeed, even the duty owed to Plaintiff by the respective parties is distinct as Iris House is only contractually obligated to repay any repairs caused by Iris House. Meanwhile, as an insurance broker, P&G had "a common law duty to obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so; however, they have no continuing duty to advise, guide or direct a client to obtain additional coverage" (Murphy v Kuhn, 90 NY2d 266, 270 [1997]). Here, it is alleged by Plaintiff that Plaintiff requested P&G's services to procure insurance to which P&G agreed to find and acquire said insurance. Furthermore, Plaintiff alleges that P&G "completed and processed an application for insurance to procure the policy requested from Union" (NYSCEF Doc No. 1, complaint ¶ 5) which included a designation by P&G of an internal email address for receipt of policy renewal and renewal applications. P&G was expected to receive the renewal applications, accurately complete them, and send them to Union to maintain the requested coverage for Plaintiff. The fact that the apartment was damaged in a fire has no consequence. P&G would have allegedly breached the duty regardless of whether the apartment caught fire, flooded, or otherwise was damaged by any party or natural disaster. It cannot be argued that the fire is what caused P&G to allegedly breach their duty to properly maintain Plaintiff's insurance policy. Thus, even [*13]assuming Iris House somehow caused or contributed to the fire, it cannot be said that Iris House caused or contributed to the same injury allegedly caused by P&G.
For the sake of completeness, this Court will address one final argument. Iris House's argument regarding contribution being inapplicable in cases of pure economic loss is incorrect. It is true that "purely economic loss resulting from a breach of contract does not constitute 'injury to property' within the meaning of New York's contribution statute [and this] is made plain by the legislative history of CPLR 1401" (Bd. of Educ. of Hudson City School Dist. v Sargent, Webster, Crenshaw & Folley, 71 NY2d at 26). However, the Court of Appeals has held that "contribution does not lie in contract cases" but that a case that sounds in both breach of contract and tort "does not of itself bar contribution" (Sommer v Fed. Signal Corp., 79 NY2d 540, 557 [1992]).[FN14]
Here, P&G seeks contribution pursuant to both theories of breach of contract and negligence. P&G posits that it was the negligence of Iris House which caused or contributed to the fire. Accordingly, arguments relying on economic losses to dismiss the present contribution action are misplaced.
Conclusion
On this motion for summary judgment, Third-Party Defendants/movants Iris House and Rasheed Murdaugh sufficiently established their entitlement as a matter of law to summary judgment against P&G on the issues of breach of contract (contractual indemnity), common law indemnification, and contribution. Iris House and Murdaugh have established that: (1) P&G was not a third-party beneficiary pursuant to the plain language of the subject lease agreement and that Iris House's motion was not premature due to a lack of discovery or depositions; (2) P&G is not entitled to indemnification; (3) P&G's cause of action sounding in common law contribution has no basis in law; and (4) the injury suffered by Plaintiff from the actions of P&G is distinct from any injury suffered by the actions or inactions of Iris House and is more akin to a loss of legal rights. Defendant/Third-Party Plaintiff P&G failed to establish the existence of a material issue of fact or need for discovery which would otherwise render the motion premature so as to rebut Iris House and Murdaugh's prima facie case.
The Court answers the question posed at the outset, "In an action by a building owner for damages due to negligence and breach of contract on the part of an insurance broker, alleging that the insurer's broker's misactions during the process of policy renewals resulted in the insurance carrier's disclaiming liability after a fire, does the insurance broker possess a third-party cause of action against those allegedly responsible for the fire?" in the negative.
Accordingly, IT IS HEREBY ORDERED that this Court GRANTS Third-Party Defendants Iris House and Rasheed Murdaugh's motion for summary judgment. As such, Defendant/Third-Party Plaintiff's third-party complaint is dismissed in its entirety.
Dated: January 28, 2024
HON. AARON D. MASLOW
Justice of the Supreme Court of the State of New York

Footnotes

Footnote 1:This document is incorrectly entitled on NYSCEF as "lease -Gibbs Aff Exh B." It appears that movant intended to reupload the lease agreement between Plaintiff and Third-Party Defendant Iris House, but accidentally reuploaded the Scatter Site Agreement between Iris House and Murdaugh again. The lease agreement is in the record on the motion, at NYSCEF Doc No. 31.

Footnote 2:It is worth noting that the cause of the fire is unknown to the Court at this time. P&G argues that the fire was caused by negligence on the part of Murdaugh but presents no evidence to corroborate this claim. Meanwhile, Murdaugh and Iris House deny causing or contributing to the fire.

Footnote 3:Plaintiff later sued Union in a separate action. That action was settled between the parties for an undisclosed amount. It is P&G's position that the settlement was for less than the cost of the damage incurred to the premises.

Footnote 4:The arguments of Third-Party Defendants Iris House and Murdaugh are contained in NYSCEF Doc No. 25, the affirmation of Thomas A. Catalano, Esq. in support of the motion.

Footnote 5:Unless the context indicates otherwise, references to Iris House going forward include co-Third-Party Defendant Murdaugh, as the within motion was made on behalf of both.

Footnote 6:Defendant law firm was sued for legal malpractice for failing to commence a lawsuit within the statute of limitations. Defendant law firm attempted to bring in as third-party defendants the medical providers who caused the underlying injuries which gave rise to the untimely lawsuit. The Court dismissed the third-party complaint for failure to show that the same injury was sustained.

Footnote 7:The plaintiff failed to acquire the required permits to open a day care center and instituted an action against the defendant architect firm for failing to abide by the terms of a contract which specified a delivery date which was not met. The Court held that the losses suffered by the plaintiff were purely economic in nature and that economic losses are not subject to contribution where the cause of action lies in breach of contract.

Footnote 8:The plaintiff alleged that the defendant breached a contract and was negligent in designing and building/renovating the plaintiff's retail location after completion of construction was delayed by 11 months. The defendant impleaded additional parties involved in the demolition/construction of the subject location. The Second Department held that contractual and/or common law contribution is inapplicable to cases sounding in breach of contract.

Footnote 9:"A party asserting rights as a third-party beneficiary must establish '(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost' " (State of California Pub. Employees' Retirement Sys. v Shearman & Sterling, 95 NY2d 427, 434-35 [2000] [quoting Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 336 (1983)]).

Footnote 10:Defendant/Third-Party Plaintiff P&G's arguments in opposition are contained in NYSCEF Doc No. 35, the affirmation of Salvatore Lapetina, Esq.

Footnote 11:Intriguingly, P&G states that "no such cases exist barring an insurance broker from making a claim for contribution against a tortfeasor directly responsible for the underlying loss for which the broker is being asked to pay" (NYSCEF Doc No. 35 ¶ 19). Furthermore, when asked by the Court during oral argument, counsel for P&G admitted that this case was unique and that no binding case law exists on the subject. This diminishes P&G's own argument against the inapplicability of Iris House's cited case law since no absolutely applicable case law exists.

Footnote 12:Specifically, P&G refers to Edenwald Contr. Co., Inc. v Northern Ins. Co. of NY, 289 AD2d 370 [2d Dept 2001], cited by Iris House. It held that the defendant/third-party plaintiff's cause of action sounding in common law indemnification was properly dismissed because the defendant/third-party plaintiff was not free from negligence).

Footnote 13:The arguments of Third-Party Defendants Iris House and Murdaugh are contained in NYSCEF Doc No. 36, the reply affirmation of Thomas A. Catalano, Esq. in support of the motion.

Footnote 14:Actions against insurance agents and brokers are governed by the statute of limitations periods applicable to negligence and breach of contract actions (see Chase Scientific Research, Inc. v NIA Group, Inc., 96 NY2d 20 [2001]).